Robert R. GREGORY, Jr.,
Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 15A01–0708–CR–348.

Court of Appeals of Indiana.

May 5, 2008.

George A. Leininger, Collins, Hensley & Wynn, Madison, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Robert R. Gregory, Jr. ("Gregory") appeals following his convictions and sentence for Dealing Methamphetamine, as a Class B felony, and Conspiracy.[1] We affirm the conviction and sentence for Dealing Methamphetamine and remand with instructions to vacate the conspiracy conviction.

### Issues

Gregory raises four issues on appeal, and we raise one issue, *sua sponte:*

I. Whether Gregory's conviction for Conspiracy to Deal Methamphetamine violates the principles of double jeopardy;

II. Whether the trial court erred in admitting evidence that was discovered during a search by police;

III. Whether sufficient evidence supports the Dealing conviction;

IV. Whether the prosecutor committed misconduct by comments made throughout the course of the trial; and

V. Whether his sentence is inappropriate.

### Facts and Procedural History[2]

Gregory, Ronnie Smith ("Smith"), and Justin Callaway ("Callaway") met while doing demolition work. The three would normally drive together to the work sites and interacted with each other while on the job. One day on their way home from work, the three discussed and agreed to make methamphetamine. The general agreement was that they would cook the methamphetamine at Callaway's mother's home, located in Dearborn County, and that Gregory would be the "cook" while Smith and Callaway would help. At the time, Callaway's mother was out of town. On November 17, 2006, Gregory purchased two packs of Energizer lithium batteries and paper towels at a local Kroger store. Lithium is commonly used in the methamphetamine manufacturing process.

On November 18, 2006, Callaway returned to his mother's home to find Smith and Gregory waiting for him in a truck. Gregory backed the truck into the barn on the property so that they could unload its contents, including a propane tank with an altered valve, lye, two bags of ammonium nitrate fertilizer, plastic bags, Coleman fuel, and crushed pills in a plastic bag. Gregory then told Callaway to boil water and dump it into a cooler. When Callaway returned to the garage with the water he

---

1. Ind.Code § 35–48–4–1.1.

2. A copy of the pre-sentence investigation report on white paper is included within the appellant's appendix. We remind the parties that Ind. Appellate Rule 9(J) requires that "[d]ocuments and information excluded from public access pursuant to Administrative Rule 9(G)(1) shall be filed in accordance with Trial Rule 5(G)." Ind. Administrative Rule (G)(1)(b)(viii) requires that "[a]ll pre-sentence reports pursuant to Ind.Code § 35–38–1–13" are "excluded from public access" and "con-

fidential." The inclusion of the report on white paper in the appellant's appendix is contrary to Trial Rule 5(G) that states in pertinent part: "Every document filed in a case shall separately identify information excluded from public access pursuant to Admin. R. 9(G)(1) as follows: (1) Whole documents that are excluded from public access pursuant to Administrative Rule 9(G)(1) shall be tendered on light green paper or have a light green coversheet attached to the document, marked 'Not for Public Access' or 'Confidential.' "

had boiled, Gregory was pouring the fertilizer through an orange funnel into the altered propane tank. Then Smith handed the lye to Gregory to pour into the tank. Once finished pouring, Gregory started shaking the tank.

Later that day, police received information that Gregory was cooking a batch of methamphetamine at the Callaway property. At three in the afternoon, officers began surveillance of the property. A few hours later, three officers went to the residence to ask Callaway some questions about an alleged domestic battery incident involving Callaway and his mother that occurred the prior week. After Callaway answered the door, he permitted the officers to enter the home. Gregory was on a couch in the living room, and during conversation with the officers, Gregory stated that his truck was parked in the barn on the property. While one of the officers was speaking with Callaway, he noticed that Callaway had something in his pocket. The officer inquired about the contents of Callaway's pockets to which Callaway responded by pulling out a couple of knives and a paper towel. The paper towel field-tested positive for methamphetamine.

After the result of the field test, one of the officers, Detective Shane McHenry, left the premises to obtain a search warrant for the property. After obtaining the warrant and having it signed by a local judge at her home, Detective McHenry returned to the Callaway residence at approximately 10:00 p.m. The warrant was executed thereafter.

During the search of the barn and surrounding property, the police recovered two fifty-pound bags of ammonium nitrate fertilizer (one opened and one unopened), two bottles of drain clog remover (lye), a bottle of Liquid Fire, two containers of camp fuel, an empty blister packet for pseudoephedrine pills, a can of acetone, a propane tank with an altered valve covered with a brown sludge, an orange filter with blue residue, a cooler, coffee filters, paper towels, a Kroger receipt for Energizer batteries and paper towels, and several other items. A bucket containing liquid was also found, and the liquid tested positive for methamphetamine and pseudoephedrine.

On November 20, 2006, the State charged Gregory with Dealing Methamphetamine, as a Class B felony, and Conspiracy to Deal Methamphetamine, as a Class B felony. Gregory filed a motion to suppress the evidence recovered from the barn, alleging that the search of the Callaway property was executed before the warrant had been obtained. The motion, supporting memorandum, and the State's response made no mention of the issue of whether Gregory had a legitimate expectation of privacy in the premises searched in order to challenge the search. After a hearing, the trial court denied the motion.

During the trial, Gregory objected to the admission of the evidence obtained in the search of the Callaway property on the same grounds asserted in his motion to suppress. During the sidebar on the objection, the State reiterated its argument asserted at the pretrial hearing and added the argument that Gregory did not have standing to challenge the search. The trial court noted that the lack of standing argument strengthened the State's argument and permitted Gregory by way of counsel to respond with any evidence that would demonstrate that Gregory had a possessory interest in the area or items searched other than being a casual visitor to the Callaway residence. Gregory's counsel replied that there was no such evidence. The trial court overruled the objection and admitted the evidence citing its prior reasoning for denying Gregory's motion to suppress as well as the State's argument of Gregory's lack of standing.

After a jury trial, Gregory was found guilty as charged. Due to double jeopardy concerns, the trial court "merged" the judgment as to conspiracy to deal methamphetamine into the first count for dealing. In sentencing Gregory, the trial court found his criminal history, lack of remorse, and the fact that Gregory committed this offense while out on bond for a similar charge in Union County as aggravating factors. The trial court considered Gregory's claim that imprisonment could pose a hardship on his two children, but declined to find it significant. The trial court sentenced Gregory to twenty years imprisonment. Gregory now appeals.

### Discussion and Decision

#### I. Double Jeopardy

■ Here, the trial court entered judgments of conviction for both counts. However, the trial court noted in sentencing that due to double jeopardy concerns it would "merge" the conspiracy judgment into the conviction for dealing. App. 12. A trial court's act of merging, without also vacating the conviction, is not sufficient to cure a double jeopardy violation.[3] A double jeopardy violation occurs when judgments of conviction are entered and cannot be remedied by the "practical effect" of concurrent sentences or by merger after conviction has been entered. *Morrison v.*

*State*, 824 N.E.2d 734, 741–42 (Ind.Ct.App. 2005), *trans. denied.* We therefore remand this cause to the trial court with an order to vacate Gregory's conviction for conspiracy to deal methamphetamine.

#### II. Admissibility of Evidence

■ First, Gregory contends that the trial court erred in admitting the evidence recovered in the search of the home and adjacent barn that violated his Fourth Amendment[4] rights because the search warrant was invalid. The State counters that Gregory does not have standing to challenge the search because he did not have a legitimate expectation of privacy in the areas searched, because Gregory did not have any possessory interest in the premises searched. Gregory responds that the State waived the issue of standing because it did not raise it at the motion to suppress hearing.

■ A trial court has a broad discretion in ruling on the admissibility of the evidence. *Scott v. State*, 855 N.E.2d 1068, 1071 (Ind.Ct.App.2006). We will only reverse a trial court's ruling on the admissibility of evidence when the trial court has abused its discretion. *Id.* A trial court abuses its discretion when its decision is clearly against the logic and effect of the

---

3. In *Green v. State*, our Supreme Court held that "a merged offense for which a defendant is found guilty, but on which there is neither a judgment nor a sentence, is 'unproblematic' as far as double jeopardy is concerned." *Green v. State*, 856 N.E.2d 703, 704 (Ind. 2006). The facts before us are distinguishable from *Green* because the trial court entered judgment on both counts in its "Judgment of Conviction" order. App. at 12. The entry of judgment of conviction twice for the same offense is a violation of a defendant's constitutional rights. *Id.* Therefore, the act of merging the previously entered judgments at the sentencing hearing did not cure the double jeopardy violation.

4. Although Gregory asserts that this search also violates his rights under Article I, Section 11 of the Indiana Constitution, he presents no separate argument with respect to the state constitution. Thus, any separate state constitutional claim is waived because of his failure to make a cogent argument under that provision. *See Francis v. State*, 764 N.E.2d 641, 646–47 (Ind.Ct.App.2002) (notes that Indiana courts interpret and apply Article I, Section 11 independently from federal Fourth Amendment jurisprudence and failure by a defendant to provide separate analysis waives any claim of error).

facts and circumstances before the court. *Id.*

Under the Fourth Amendment, an individual's right against unreasonable searches and seizures is personal. *Best v. State*, 821 N.E.2d 419, 424 (Ind.Ct.App. 2005), *trans. denied.* To challenge a search, a defendant must have a legitimate expectation of privacy in the place searched. *Id.* When the constitutionality of a search is challenged, a defendant has the burden of demonstrating a legitimate expectation of privacy in the premises searched. *Matson v. State*, 844 N.E.2d 566, 570 (Ind.Ct.App.2006), *trans. denied.* However, where the state has failed to make any trial court challenge as to whether the defendant has a legitimate expectation of privacy, the state may not raise the issue for the first time on appeal. *Armour v. State*, 762 N.E.2d 208, 213 (Ind. Ct.App.2002), *trans. denied.*

Here at the motion to suppress hearing, both the State and Gregory failed to address whether Gregory had a legitimate expectation of privacy in the Callaway property searched. However, the State did raise the issue of whether Gregory had standing to challenge the search when Gregory objected to the admission of the evidence at trial. "[A] ruling on a pretrial motion to suppress is not intended to serve as the final expression concerning admissibility." *Joyner v. State*, 678 N.E.2d 386, 393 (Ind.1997) (quoting *Gajdos v. State*, 462 N.E.2d 1017, 1022 (Ind.1984)). Thus, the preliminary ruling on a defendant's motion to suppress is subject to modification at trial. *Id.* Therefore, both a defendant and the State may raise new arguments at trial regarding the admissibility of evidence. Moreover, the issue of a defendant's ability to challenge the admissibility of the evidence from a search is only waived when the State fails to make *any* trial court challenge. A challenge was clearly made here. When the State raised the additional argument of whether Gregory even had the ability to challenge the validity of the search, the trial court provided Gregory, by way of counsel, with the opportunity to provide any evidence that would demonstrate that Gregory had any ownership interest in the property other than being a casual visitor. Gregory, by way of counsel, responded he had no such evidence. Therefore, the State is not raising the issue for the first time on appeal.

It is clear on the facts of the case that Gregory had no interest in the property searched and that he was just a mere visitor to the Callaway property. Thus, Gregory did not have a legitimate expectation of privacy in the premises searched and cannot challenge the search based on the Fourth Amendment. Therefore, the trial court did not err by admitting the evidence.

### III. Sufficiency of the Evidence

Gregory contends that the evidence is insufficient to support his conviction because the only evidence of his guilt, the testimony of co-defendant Callaway, was incredibly dubious. In addressing a claim of insufficient evidence, we do not reweigh the evidence nor do we reevaluate the credibility of witnesses. *Rohr v. State*, 866 N.E.2d 242, 248 (Ind.2007), *reh'g denied.* We view the evidence most favorable to the verdict and the reasonable inferences therefrom and will affirm the conviction if there is substantial evidence of probative value from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Id.* In general, the uncorroborated testimony of one witness is sufficient to sustain a conviction on appeal. *Seketa v. State*, 817 N.E.2d 690, 696 (Ind.Ct.App.2004). However, appellate courts may apply the "incredible dubiosity" rule to impinge on the jury's func-

tion to judge the credibility of a witness. *Fajardo v. State*, 859 N.E.2d 1201, 1208 (Ind.2007). The rule is as follows:

> If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

*Id.* (quoting *Love v. State*, 761 N.E.2d 806, 810 (Ind.2002)). However, discrepancies between a witness's trial testimony and earlier statements made to police and in depositions do not render such testimony "incredibly dubious." *Holeton v. State*, 853 N.E.2d 539, 541 (Ind.Ct.App.2006).

The charging information alleged in relevant part:

> On November 18, 2006, in Dearborn County, State of Indiana, Justin M. Callaway, Robert H. Gregory JR, and Ronnie C. Smith did knowingly manufacture methamphetamine, pure or unadulterated.

Appellant's Appendix at 66. To convict Gregory of dealing methamphetamine, as charged, the State was required to prove that he (1) knowingly or intentionally (2) manufactured (3) methamphetamine. *See* Ind.Code § 35–48–4–1.1.

At trial, Callaway testified that he, Gregory and Smith had agreed to make methamphetamine, and that Gregory would be the "cook." According to Callaway's testimony, Gregory and Smith arrived at his mother's home with a pick-up truck loaded with items used to manufacture methamphetamine, including a propane tank with an altered valve, lye, two bags of ammonium nitrate fertilizer, plastic bags, Coleman fuel, and crushed pills in a plastic bag. Callaway further testified that he saw Gregory and Smith mix the ammonium nitrate fertilizer and the lye in the barn on the property.

In requesting that we apply the incredible dubiosity rule, Gregory argues that the contradiction of Callaway's trial testimony by pre-trial statements to police and in earlier hearings and testimony of other witnesses presented at trial supports the rule's application. However, as previously stated, discrepancies between a witness's trial testimony and earlier statements made to police and in depositions do not render such testimony "incredibly dubious." Gregory has not demonstrated that Callaway's testimony is inherently improbable testimony or equivocal, wholly uncorroborated testimony that is incredibly dubious.

Furthermore, there is circumstantial evidence supporting the conviction. The State presented a store surveillance video depicting Gregory buying paper towels and Energizer batteries at Kroger the day prior to the discovery of the methamphetamine lab. The receipt along with the Kroger bag from the purchase was found in the barn along with the materials for manufacturing methamphetamine. The State also presented the testimony of Indiana State Trooper Paul Harrison, assigned to the methamphetamine suppression unit, that Energizer batteries are a common source of lithium used in the manufacturing process. Trooper Harrison also testified that lithium was required for the process that was apparently being used in the lab discovered in the barn. Gregory's truck was also found parked inside the barn.

Finally, Gregory asserts that Callaway's testimony was indirectly coerced

because he was testifying against Gregory in exchange for a reduced sentence. However, Callaway was questioned extensively as to his plea agreement at the beginning of his testimony. Therefore, the jury was fully informed of the situation so that they could incorporate the circumstance in determining Callaway's credibility. The fact that an accomplice may not be completely trustworthy goes to the weight and credibility of his testimony, which is entirely within the province of the jury and will not be reviewed upon appeal. *Dixson v. State*, 865 N.E.2d 704, 714 (Ind.Ct.App.2007), *trans. denied.*

We conclude that the "incredible dubiosity" rule is not applicable. Gregory's remaining arguments are simply invitations to reweigh the evidence or reassess the credibility of witnesses. This we shall not do. The evidence is sufficient to support Gregory's conviction for dealing in methamphetamine.

### IV. Prosecutor Misconduct

■■■■■ Next, Gregory asserts that the prosecutor committed misconduct by making prejudicial statements regarding the dangers of methamphetamine during *voir dire* and throughout the trial. In reviewing a claim of prosecutorial misconduct, a court determines: (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct had a probable persuasive effect on the jury. *Ritchie v. State*, 809 N.E.2d 258, 268 (Ind.2004). Though normally referred to as "grave peril," a claim of improper argument to the jury is measured by the probable persuasive effect of any misconduct on the jury's decision and whether there were repeated occurrences of misconduct, which would evidence a deliberate attempt to improperly prejudice the defendant. *Id.* at 269. A party's failure to present a contemporaneous trial objection contending prosecutorial misconduct precludes appellate review of

the claim. *Booher v. State*, 773 N.E.2d 814, 817 (Ind.2002). However, such default may be avoided if the alleged misconduct amounts to fundamental error. *Id.* To prevail on such a claim, the defendant must establish not only the grounds for prosecutorial misconduct but also the additional grounds for fundamental error. *Id.* at 818. For a claim of prosecutorial misconduct to rise to the level of fundamental error, the defendant must demonstrate that the misconduct made a fair trial impossible or constitutes clearly blatant violations of basic and elementary principles of due process and presents an undeniable and substantial potential for harm. *Id.* at 817.

#### A. Voir Dire

■■■ During *voir dire*, the prosecutor read a poem about methamphetamine before questioning the panel about their attitudes regarding the drug and the state laws prohibiting its production or use. Gregory argues that this was an improper tactic attempting to prejudice the jury. Gregory objected when the poem was read, preserving the issue for appeal.

■■■ "The purpose of *voir dire* is to determine whether a prospective juror can render a fair and impartial verdict in accordance with the law and the evidence." *Joyner v. State*, 736 N.E.2d 232, 237 (Ind. 2000). More specifically, such examination of prospective jurors is used to discover whether a prospective juror has any opinion, belief, or bias which would affect or control his determination of the issues to be tried, providing a basis to exercise the right of challenge either peremptory or for cause. *Holmes v. State*, 671 N.E.2d 841, 854 (Ind.1996). However, our Supreme Court has condemned the practice of counsel utilizing *voir dire* as an opportunity to " 'brainwash' or attempt to condition the jurors to receive the evidence with a

jaundiced eye." *Robinson v. State,* 266 Ind. 604, 610, 365 N.E.2d 1218, 1222 (1977). Questions that examine jurors as to how they would act or decide in certain contingencies or when presented with certain evidence are improper. *Perryman v. State,* 830 N.E.2d 1005, 1008 (Ind.Ct.App. 2005).

 However, proper examination may include questions designed to disclose the jurors' attitudes about the type of offense charged. *Id.* The parties may also attempt to uncover the jurors' preconceived ideas about a defense the defendant intends to use. *Id.* To reveal the jurors' attitudes and ideas, the parties may pose hypothetical questions, provided they do not suggest prejudicial evidence not adduced at trial. *Id.*

The poem read by the prosecutor during *voir dire* is as follows:

I destroy homes, I tear families apart, I take your children, and that's just the start. I'm more costly than diamonds, more precious than gold, the sorrow I bring is a sight to behold. If you need me, remember I'm easily found. I live around you in schools and in town. I live with the rich, I live with the poor. I live down the street, maybe next door. I'm made in a lab, but not like you think. I can be made under the kitchen sink. I have many names, but there's one you know best. I'm sure you've heard of me, my name is meth. My power is awesome. Try me, you'll see. But if you do, you may never break free.

Trial transcript at 93. The prosecutor used this poem as a springboard to ask the prospective jurors about their attitudes towards methamphetamine and the laws circumscribing its creation and use. The poem is a statement of opinion, not regarding the guilt or innocence of someone producing or using the drug, but the effect of its use and its prevalence in society. Its recitation was immediately followed by questions attempting to assess the attitudes of the prospective jurors regarding the type of offense charged. The reading of the poem was not misconduct.

Moreover, this style of questioning was most likely not effective. Unlike cross examination, counsel use *voir dire* to discern which prospective jurors have interests or bias that would affect their resolution of the issues in the case. Reciting such definitive statements and then requesting feedback only blunts the inquiry. Thus, a more effective *voir dire* would incorporate the use of open-ended questions that allow prospective jurors in response to freely express an opinion on the point of inquiry. In this instance, poor strategy does not equate to misconduct.

**B. Questions As to the Dangerousness of Manufacturing Methamphetamine**

 Gregory also complains of questions posed to State witnesses regarding the dangers of the creation of methamphetamine. No objection was made to these questions, so Gregory must demonstrate that these questions constitute misconduct that rise to the level of fundamental error. The questions pertained to whether the process used in the barn was extremely dangerous and the education of responders to the danger of working to clean up these sites. As the State notes, this questioning and the corresponding responses were to communicate to the jury why the majority of the evidence had been destroyed and was presented in trial through photographs. The questions from the transcript noted by Gregory usually coincide with areas of questioning involving the safe disposal of a methamphetamine lab discovered by police. We conclude that these questions did not amount to misconduct, let alone fundamental error.

### C. Closing Argument

 Lastly, Gregory asserts that the prosecutor committed misconduct by making the following comments in closing argument:

> You've heard from this side of the room that meth is not on trial. I'm going to tell you, Gregory and Smith's meth is on trial. It's the meth that they made in a building at a residence in a neighborhood on a very busy road in this county that school buses are going by this morning and cars travel every day and it's near churches, it's near restaurants and it's near other people's houses. Don't let them mislead you. Meth destroys people, it destroys communities. And the meth that they were putting into this community is on trial and it's guilty and they're guilty.

Tr. at 831. In final arguments, a prosecutor can "state and discuss the evidence and reasonable inferences that can be derived therefrom so long as there is no implication of personal knowledge that is independent of the evidence." *Hobson v. State*, 675 N.E.2d 1090, 1096 (Ind.1996) (quoting *Kappos v. State*, 577 N.E.2d 974, 977 (Ind. Ct.App.1991), *trans. denied*). Furthermore, statements of opinion are not prohibited. *Hughes v. State*, 508 N.E.2d 1289, 1303 (Ind.Ct.App.1987), *trans. denied*. We conclude that these comments amount to nothing more than the prosecutor's opinion that methamphetamine has disastrous effects on the community. Therefore, no misconduct was committed.

### V. Appropriateness of Sentence

 Gregory contends that the sentence imposed by the trial court is inappropriate under Indiana Appellate Rule 7(B). Our Supreme Court recently reviewed the standard by which appellate courts independently review criminal sentences:

> Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence through Indiana Appellate Rule 7(B), which provides that a court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. The burden is on the defendant to persuade us that his sentence is inappropriate.

*Reid v. State*, 876 N.E.2d 1114, 1116 (Ind.2007) (internal quotation and citations omitted). Gregory's challenged sentence is for a Class B felony. The range of possible sentences for a Class B felony is between a minimum of six years and a maximum of twenty years with an advisory sentence of ten years. The trial court sentenced Gregory to the maximum of twenty years.

As for the nature of the offense, Gregory agreed to create methamphetamine with Smith and Callaway. Gregory offered his knowledge of producing methamphetamine by agreeing to serve as the "cook." Gregory used his truck to bring the necessary ingredients to the Callaway residence and proceeded to process the methamphetamine in the barn. Gregory directed Callaway and Smith as to how to help him in the procedure to make the drug.

As for the character of the offender, Gregory has a criminal history, including convictions for driving while under the influence, possession of drug paraphernalia, theft, and illegal assembly or possession of chemical for manufacture. When he committed this offense, Gregory was on bond

in another cause pending in Union Circuit Court.

Based on the nature of the offense and the character of the offender, we are not persuaded that Gregory's maximum sentence of twenty years is inappropriate.

## Conclusion

In sum, the trial court did not err in admitting the evidence resulting from the search of the Callaway residence. There was sufficient evidence, both circumstantial and direct, to support Gregory's conviction for dealing methamphetamine. The prosecutor did not commit misconduct in his reading of a poem in *voir dire*, questions regarding the dangers of a methamphetamine lab, or comments in closing argument. Finally, Gregory's maximum sentence of twenty years is not inappropriate. However, we remand to the trial court with instruction to vacate Gregory's conviction for conspiracy.

Affirmed and remanded with instructions.

FRIEDLANDER, J., concurs.

KIRSCH, J., concurs in part and concurs in result in part with opinion.

KIRSCH, Judge, concurring in part and concurring in result in part.

The poem read by the prosecutor to the jury during *voir dire* was not aimed at determining juror attitudes. It was not geared to determine whether the jury could render a fair and impartial verdict. Nor was it intended to determine whether any juror had an opinion, bias or belief that would affect her or his determination of the issues. As a result, I believe the trial court abused its discretion in allowing the reading.

I also think that the prosecutor's comments during closing argument were improper. "It is misconduct for a prosecutor to request the jury to convict a defendant for any reason other than his guilt." *Wisehart v. State*, 693 N.E.2d 23, 59 (Ind. 1998) (quoting *Maldonado v. State*, 265 Ind. 492, 500, 355 N.E.2d 843, 849 (1976)). Here, in saying that the methamphetamine was on trial, I believe the prosecutor crossed this line. The comments outlined above demonstrate that the prosecutor sought to persuade the jury that it should convict on the basis of the dangers that methamphetamine poses to the community.

A claim of prosecutorial misconduct requires a determination that the misconduct had a probable persuasive effect on the jury's decision. *Hancock v. State*, 737 N.E.2d 791, 797 (Ind.Ct.App.2000). Because I agree with my colleagues that the poetry reading was not effective, I do not believe that the error in allowing the reading placed Gregory in a position of grave peril. Moreover, because there was overwhelming independent evidence of Defendant's guilt, any error in regard to the prosecutor's statements during closing argument was harmless.

Accordingly, I concur in result as to these issues and fully concur as to all other issues.