**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Jun 21 2012, 9:10 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PETER D. TODD**
Elkhart, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

FERNANDO PADILLA-ROMO,       )
                             )
    Appellant-Defendant,     )
                             )
         vs.               )    No. 20A05-1107-CR-426
                             )
STATE OF INDIANA,            )
                             )
    Appellee-Plaintiff.      )

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable Evan S. Roberts, Judge
The Honorable Dean O. Burton, Magistrate
Cause No. 20D01-1006-FD-121

**June 21, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Following a jury trial, Fernando Padilla-Romo appeals his conviction for domestic battery in the presence of a minor[1] as a Class D felony. He raises two issues, which we restate as:

I.    Whether the prosecutor engaged in misconduct during trial that prevented Padilla-Romo from receiving a fair trial; and

II.   Whether the trial court properly quashed Padilla-Romo's subpoena to the county's elected prosecutor.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In June 2010, Darla Koewers, then nineteen years old, was residing at her mother's home in Elkhart, Indiana. At that time, Koewers and Padilla-Romo had two children together, ages fifteen months and four months. By agreement of Koewers and Padilla-Romo, the children were living primarily with Padilla-Romo at his Elkhart apartment, but Koewers could see them regularly and essentially at any time she desired.

On the afternoon of June 6, 2010, Padilla-Romo brought the children to Koewers at her mother's residence. He wanted her to come with him back to his apartment to spend time with the children there.[2] However, at that time, Koewers had a medical condition that prevented her from lifting anything over ten pounds, and because Padilla-Romo planned to not be present at the apartment, she would be there alone with the children and could not lift them or take care of them. Thus, she was unwilling to go to the apartment. The two argued

---

[1] *See* Ind. Code § 35-42-2-1.3(a)(3), (b)(2).

[2] The record before us suggests that Padilla-Romo did not like Koewers's father and did not want to leave the children at the house because he was there. *Tr.* at 391.

2

in his car, with Padilla-Romo in the driver's seat and Koewers in the passenger seat, and the two children in car seats in the backseat of the car. Padilla-Romo "got mad" because Koewers had said "no" to him. *Tr.* at 394. He told her to exit the vehicle, but she did not. According to what Koewers later told police, Padilla-Romo kicked her in her side, in the area of her stomach, which pushed her out of the open car door and onto the ground. Padilla-Romo sped away, with the two children in the backseat.

Koewers called 911 and reported the incident. Officer Ryan Weir of the Elkhart County Police Department received the dispatch call at 4:45 p.m. and arrived two minutes later. Koewers gave him a verbal and a written statement, reporting that Padilla-Romo kicked her in the stomach in front of her children and that it hurt. Officer Weir did not observe any visible injuries to Koewers. Officer Scott Haigh also heard the dispatch call, but before he arrived at the scene, he received information from Officer Weir with a description of Padilla-Romo, the blue Ford Escort he was driving with two children in the back seat, and the location of his apartment. Officer Haigh drove to the apartment complex and encountered the Escort in the parking lot; Officer Haigh approached the vehicle, and Padilla-Romo identified himself, at which time Officer Haigh took him into custody. The State subsequently charged Padilla-Romo with one count of domestic battery in the presence of a minor.

In a meeting at the prosecutor's office that occurred days before trial, Koewers said that Padilla-Romo had kicked her in the stomach with his heel during the argument. Present at that meeting were the prosecutor trying the case, another attorney from the county prosecutor's office named Susan Snyder ("Snyder"), and a victim's advocate on behalf of

3

Koewers.

During trial, Koewers testified as a witness for the State. She testified that she and Padilla-Romo argued that day in the car, but nothing physical had happened during the argument, specifically stating Padilla-Romo had not kicked her. She explained that she had lied to police at the scene, when she said that Padilla-Romo had kicked her, because she was angry with him and wanted him to get in trouble. She also testified that, as of the time of trial, she regularly spent time with Padilla-Romo and that she loved him. According to Koewers, Padilla-Romo financially supported the two children; Koewers, who did not complete the tenth grade, testified that she did not have a job or a source of income.

Because Koewers recanted her story of being kicked in the stomach, and specifically denied that she had told Snyder that Padilla-Romo had kicked her in the stomach, the State advised that it intended to call Snyder as a witness to impeach Koewers. Considerable discussion was had between counsel and the trial court on the issue, with Padilla-Romo's counsel objecting to Snyder being permitted to testify. Ultimately, the trial court permitted Snyder to testify. Snyder stated that Koewers had told the prosecutors in the meeting a few days before trial that Padilla-Romo had grabbed her, kicked her with the heel of his foot, and that it hurt when he did that. Snyder also testified that Koewers told the prosecutors that Padilla-Romo had urged her to lie.

Before Snyder testified, Padilla-Romo subpoenaed the elected county prosecutor, Curtis Hill. The intended purpose of Hill's testimony was to have Hill, as Snyder's supervisor, impeach her testimony. The State filed a motion to quash the subpoena. The trial court received argument on the motion. The trial court determined that Hill's testimony

4

could not be helpful because he was not present at the meeting in question with Snyder, and it granted the State's motion to quash, thus precluding Padilla-Romo from calling Hill to testify.

The record before us reflects active, if not contentious, advocacy by counsel for both parties, with numerous objections raised throughout trial. As is relevant to this appeal, counsel for Padilla-Romo objected numerous times during the State's voir dire, asserting that the prosecutor was engaging in lecturing the potential jurors, rather than asking questions to find a fair and impartial jury. Later, during the State's closing argument, counsel for Padilla-Romo objected numerous times to what he claimed was irrelevant and prejudicial commentary by the State.

Padilla-Romo was convicted as charged. He was sentenced to eighteen months of imprisonment, all suspended to probation. He now appeals.

**DISCUSSION AND DECISION**

**I.     Prosecutorial Misconduct**

Padilla-Romo asserts that during trial the prosecutor engaged in prosecutorial misconduct in several ways: (1) during voir dire; (2) by calling Snyder, a county deputy prosecutor, as a witness; and (3) during closing argument. When improper argument is alleged to have been made, the proper procedure is to request the trial court to admonish the jury. *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006). If the party is not satisfied with the admonishment, then he or she must move for a mistrial. *Id.* Failure to request an admonishment or to move for mistrial, results in waiver. *Id.*

In reviewing a properly preserved claim of prosecutorial misconduct, we determine (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected. *Id.* (citing *Booher v. State,* 773 N.E.2d 814, 817 (Ind. 2002)). Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. *Id*. (citing *Mahla v. State,* 496 N.E.2d 568, 572 (Ind. 1986)). A claim of improper argument to the jury is measured by the probable persuasive effect of any misconduct on the jury's decision and whether there were repeated occurrences of misconduct, which would evidence a deliberate attempt to improperly prejudice the defendant. *Gregory v. State*, 885 N.E.2d 697, 706 (Ind. Ct. App. 2008), *trans. denied* (2009).

Where a claim of prosecutorial misconduct has not been properly preserved, our standard for review is different from that of a properly preserved claim. *Cooper*, 854 N.E.2d at 835. In that case, the defendant must establish not only the grounds for the misconduct but also the additional grounds for fundamental error. *Id*.; *Gregory*, 885 N.E.2d at 706. Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue. *Cooper*, 854 N.E.2d at 835. Defendant must demonstrate that the misconduct made a fair trial impossible or the misconduct constitutes clearly blatant violations of basic and elementary principles of due process and presents an undeniable and substantial potential for harm. *Gregory*, 885 N.E.2d at 706.

### A.     State's Voir Dire

Padilla-Romo alleges that the prosecutor repeatedly committed misconduct during voir dire by making statements, remarks, and questions that were intended to brainwash and lecture the jurors, not to lead to the selection of an impartial jury. The purpose of voir dire examination is to determine whether potential jurors can render a fair and impartial verdict in accordance with the law and the evidence. *Id.* For instance, questions designed to disclose the jurors' attitudes about the offense charged or questions intended to discover preconceived ideas about a defense are proper. *Id.* However, the practice of utilizing voir dire to "brainwash" or condition the jury regarding the evidence is improper. *Id.*

On appeal, Padilla-Romo challenges the State's voir dire on a number of fronts, including that the prosecutor lectured to the potential jurors for minutes at a time, conditioned the jury by talking about the purpose of domestic violence laws, and referred to Koewers as a "victim." *Appellant's Br*. at 6. Padilla-Romo asserts that the prosecutor pontificated rather than asked questions designed to determine if a bias or prejudice existed, maintaining that the State's tactics were intended to "stack the deck" against him and prevented him from receiving a fair trial. *Appellant's Br*. at 17.

Initially, we observe that Padilla-Romo objected to some but not all statements that he now claims constitute prosecutorial misconduct, and he did not request an admonishment or a mistrial; therefore, he waived the issue for appeal. *Carter v. State*, 932 N.E.2d 1284, 1288 (Ind. Ct. App. 2010) (party's failure to present contemporaneous objection contending prosecutorial misconduct waives issue for appeal); *Gregory*, 885 N.E.2d at 706 (same). Such waiver may be avoided if the alleged misconduct amounts to fundamental error. *Id.*

7

Here, assuming without deciding that the prosecutor's statements rose to the level of misconduct, Padilla-Romo has not established fundamental error resulting from the State's voir dire. He has not argued or explained specifically in what way he was prejudiced or what probable effect the statements had on the jury. He does not provide authority to support his position that, because of the prosecutor's voir dire, he did not receive a fair trial. Our review of the record before us reflects that throughout the voir dire process, the trial court appropriately and sufficiently addressed Padilla-Romo's objections as they were raised. Although some objections were sustained, with the trial court cautioning the State not to "educate" the potential jurors or "try the case in advance," others were overruled. *Tr*. at 38-40, 66-67, 68-69, 70-72, 75-78, 79-82, 89-92, 98-100, 107-109, 184-185, 206-209. In response to the concerns voiced by Padilla-Romo's counsel, the trial court determined that even though the State "crossed the line" on a couple of occasions, the State's "voir dire was appropriate in general[.]" *Id*. at 184-85, 207, 209. We agree with that conclusion. Padilla-Romo has failed to carry his burden of establishing that, because of the alleged prosecutorial misconduct during voir dire, a fair trial was impossible.

### B. *Calling Snyder as an Impeachment Witness*

At trial, Koewers testified that Padilla-Romo had not kicked her. Thereafter, the State asked Koewers if she remembered being present at the meeting, which took place just days prior to trial, at the prosecutor's office. Koewers acknowledged being present for that meeting, but she denied having said in the meeting that Padilla-Romo had kicked her. Those present for that interview were: (1) Kirsten Fochtman, the deputy prosecutor trying the case; (2) Snyder, another deputy prosecuting attorney with the Elkhart County Prosecutor's Office;

8

and (3) a victim's advocate. Because Koewers recanted her allegations of having been kicked, the State sought to impeach her testimony by calling Snyder as a witness. Padilla-Romo objected, arguing it was improper under Indiana's Professional Rules of Conduct for Snyder to testify because she was an active attorney on the case and because she was not on the witness list. *Tr.* at 465-66. Padilla-Romo also objected because Snyder's legal expertise was in prosecuting child molestation cases, and any reference to that during her testimony would be prejudicial to him. The trial court overruled the objections and permitted her testimony for impeachment purposes.

On appeal, Padilla-Romo urges that it was prosecutorial misconduct for the State to call Snyder as a witness because she "was clearly assisting in the prosecution" of the case, and therefore her testimony was improper under Indiana Rule of Professional Conduct 3.7.[3] *Appellant's Br.* at 18. However, contrary to his characterization that she was "clearly assisting in the case," our review of the record reveals no other involvement by Snyder on the case beyond that one meeting with Koewers. The pre-trial meeting was scheduled because Fochtman had been advised that Koewers desired to meet with the prosecutor's office in order to advise that she had not been kicked as she had previously reported, *i.e.*, Koewers was changing her story. Upon learning of this, Fochtman included Snyder at the meeting

---

[3] Rule 3.7 provides: (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
    (1) the testimony relates to an uncontested issue;
    (2) the testimony relates to the nature and value of legal services rendered in the case; or
    (3) disqualification of the lawyer would work substantial hardship on the client.
(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

9

because Snyder, whose prosecutions of child molestation cases sometimes included aspects of domestic violence, was familiar with the process and dynamics of interviewing victims and witnesses who were reluctant to testify against family members.

At trial, Snyder testified that she did not actually speak very much to or with Koewers at the meeting; rather, she primarily listened and observed. *Tr*. at 483-84. Snyder testified that she heard Koewers state that Padilla-Romo kicked her with his heel in her stomach, and it hurt. According to Snyder, Koewers also stated, "Fernando asked me to lie." *Id*. at 486. There was no evidence that Snyder has any other involvement in the case beyond her presence at Koewers's interview. We reject Padilla-Romo's assertion that she was an advocate and assisting in the prosecution of his case.

Padilla-Romo also alleges it was prosecutorial misconduct for the State to recognize Snyder's expertise as a prosecutor of child molestation offenses because by doing so the State intended "to clearly plant in the [minds of the jurors] that she was involved for reasons undisclosed to the jury." *Appellant's Br*. at 18. We disagree. Snyder testified as to her education, background, and legal experience, which at least in the last number of years was primarily in the area of child molestation; however, nothing suggested she was present at the meeting with Koewers *because* of any molestation allegations being in any way involved in the present case. Padilla-Romo has failed to establish that calling Snyder to testify constituted prosecutorial misconduct.

### C.    *State's Closing Argument*

Padilla-Romo argues that the State's closing argument included several statements that were either irrelevant or misleading, which prejudiced him. Initially, we note that

Padilla-Romo waived them by failing to request an admonishment or, if unsatisfied with that, then a mistrial, and he failed to carry his burden of establishing fundamental error. *Cooper*, 854 N.E.2d at 835. Nevertheless, we examine the alleged misconduct.

Padilla-Romo claims that the State committed prosecutorial misconduct when it stated that the reason Padilla-Romo was charged with domestic violence was to keep the community safe. Padilla-Romo objected, and the trial court sustained the objection and admonished the jury to disregard the State's comments about the safety of the community. Padilla-Romo asserts on appeal that the likely affect of the State's remarks on the jurors was that they would consider their job to be protecting the community, whereas actually the jury's job was to decide the case on its own merits. However, if Padilla-Romo was unsatisfied with the admonishment, he should have requested a mistrial.

Padilla-Romo asserts that it was misconduct for the prosecutor to state, even metaphorically, that "today Darla Koewers is stuck in a room with you" and then asking, "Are you going to step in, step up, or step away?" *Tr*. at 563; *Appellant's Br*. at 20. He argues on appeal that the question essentially was asking the jury whether it was going to protect or rescue Koewers, which was improper because the jury's job was to decide whether the State presented sufficient evidence to convict Padilla-Romo, "not to step up and protect Koewers." *Appellant's Br*. at 20. The trial court had already overruled Padilla-Romo's prior but related objection that challenged the State's use of the analogy that Koewers was "stuck in a room" with defendant on June 6, finding that it was simply a metaphor and permissible. *Tr*. at 545. Padilla-Romo did not object or request admonishment or mistrial at the point when the State posed the same-type of metaphor that Koewers was stuck in a room with the

11

jury and would it step up or step away. He has established neither prejudice nor fundamental error as a result of the State's argument in this regard.

Padilla-Romo also takes issue with the State's comment: "Even [Padilla-Romo's attorney] recognizes the defendant is the one in control of the situation." *Tr*. at 548. Padilla-Romo's counsel objected at trial on the basis that it was improper for the State to speculate what he thought or believed. The trial court sustained the objection and instructed the jury to disregard that comment. *Id*. at 549-50. On appeal, he urges that "the implication still existed that Romo's own attorney believed he was guilty." *Appellant's Br*. at 21. However, he did not request a mistrial or otherwise express discontent with the trial court's admonishment to the jury to disregard the comment.

Padilla-Romo next asserts that the State committed prosecutorial misconduct when in closing argument the prosecutor said Koewers was faced with choosing "between foster care and Fernando Padilla-Romo and she chose him." *Tr*. at 551; *Appellant's Br*. at 16. Padilla-Romo's counsel objected on the basis that there was no evidence related to foster care and no evidence that Koewers was considering it. The trial court sustained the objection and admonished the jury to "disregard the comment relative to foster care." *Tr*. at 553. Again, Padilla-Romo did not voice dissatisfaction with the admonishment or request a mistrial.

Padilla-Romo also challenges as misconduct the prosecutor's comments in closing argument that referenced her own religious beliefs. During trial, Padilla-Romo's counsel objected on the basis that her religious beliefs were irrelevant and prejudicial. The trial court sustained the objection and admonished the jury to ignore the comments about personal

12

religious beliefs. *Id*. at 554-56. Padilla-Romo did not indicate any discontent with the admonishment or request a mistrial.

Based on the record before us, we are not persuaded that comments in the State's closing argument constituted prosecutorial misconduct or that any error, let alone fundamental error, occurred.

## II. Motion to Quash Testimony of Prosecutor Hill

Padilla-Romo asserts that the trial court abused its discretion when it denied him the opportunity to call Hill as an impeachment witness. The decision to admit or exclude evidence is within the trial court's sound discretion. *Beaty v. State*, 856 N.E.2d 1264, 1268 (Ind. Ct. App. 2006), *trans. denied* (2007). We will reverse only when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id*.

Here, after the trial court ruled that it would permit the State to call Snyder as a witness to impeach Koewers, who at trial denied that she had told Snyder just days before trial that Padilla-Romo had kicked her in the stomach, Padilla-Romo issued a subpoena to county prosecutor Hill calling him to testify at trial, in order to impeach the credibility of Snyder. According to Padilla-Romo the purpose of calling Hill to testify was to ask him about deputy prosecutor Snyder as an employee, to discuss the procedures utilized by his Prosecutor's Office to interrogate victims and whether Snyder and the prosecutor on the case followed those procedures. The trial court granted the State's motion to quash, finding that Hill's testimony would not be useful.

On appeal, Padilla-Romo contends the trial court abused its discretion by denying him the opportunity to call Hill, "the only person who could impeach [Snyder's] credibility," and

13

therefore his Sixth Amendment right to compulsory process was "unconstitutionally limited." *Appellant's Br*. at 22. Padilla-Romo argues that the trial court's basis for granting the motion to quash, namely that the testimony would not serve any material purpose, was erroneous because Padilla-Romo was only seeking to call Hill to impeach Snyder by eliciting testimony from him, as Snyder's employer, about the policies of his office relating to "interrogation of alleged victims." *Id*. at 24. In particular, Padilla-Romo wanted Hill to provide his opinion as to whether the interview with Koewers was "appropriate or was [] a coercive-type environment." *Tr*. at 459-60.

We agree with the State that although Hill would have been able to testify generally as to the policy or procedure that the Elkhart County Prosecutor's Office follows with regard to interviewing alleged victims and witnesses, Hill was not present at the interview with Koewers. He had no involvement with the case. Padilla-Romo has not established that the trial court abused its discretion when it granted the motion to quash and precluded Hill's required presence at trial.

Affirmed.

BAKER, J., concurs.

BROWN, J., concurs in result with separate opinion.

**IN THE**

# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| FERNANDO PADILLA-ROMO, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A05-1107-CR-426 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

**BROWN, Judge, concurring in result.**

I concur in the result reached by the majority but write separately to state my belief that some of the prosecutor's statements to the jury during voir dire constitute improper argument, and some statements in her closing argument were also clearly improper and constitute prosecutorial misconduct. However they do not rise to the level of fundamental error and I agree that Padilla-Romo failed to carry his burden of establishing that a fair trial was impossible.