## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 20 2015, 8:33 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

David K. Payne
Rachel E. Doty
Braje, Nelson & Janes, LLP
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ryan A. Phelps,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

November 20, 2015

Court of Appeals Case No.
46A03-1501-CR-23

Appeal from the LaPorte Superior Court

The Honorable Kathleen B. Lang, Judge

Trial Court Cause No.
46D01-1211-MR-548

**Baker, Judge.**

[1] Ryan Phelps appeals his convictions for Murder,[1] a felony, Felony Murder,[2] a felony, and Robbery,[3] a class A felony. Finding that these convictions violate the constitutional prohibition against double jeopardy, we remand to the trial court with instructions that it vacate Phelps's felony murder conviction and reduce his robbery conviction to a class C felony. We have adjusted Phelps's sentence to accord with these convictions. In all other respects, we affirm the judgment of the trial court.

## Facts

[2] In 2012, Phelps met Gerald Peters, a retired teacher living in Michigan City. Phelps was homeless and unemployed at the time, and Peters chose to help Phelps by allowing him to live in Peters's home. Peters, who operated a theater in town, also gave Phelps some work to do there. He gave Phelps money and bought him things throughout this time.

[3] After a few months, Peters began to notice that certain items from his home and the theater had gone missing. He also noticed that money was missing from his wallet. Peters suspected Phelps of stealing and confronted Phelps about it in early November 2012. Peters told Phelps that Phelps could no longer live with him, but that he could still come by to use the shower when he needed. Phelps moved out and went to live with his friend Trevon Walker.

---

[1] Ind. Code § 35-42-1-1(1).

[2] I.C. § 35-42-1-1(2).

[3] I.C. § 35-42-5-1.

[4]     A few days later, on November 7, 2012, Phelps, along with Walker, Martell Anderson, and M. Joseph Basford, formulated a plan to rob Peters's home. Phelps planned to go over to Peters's home and tell Peters that he was going to use the shower. Phelps would then leave the back door open so that the others could come inside, "knock the old man out," and rob the house. Tr. p. 941.

[5]     Later that day, Phelps met the others outside Peters's home and went inside by himself to take a shower. As planned, he left the back door open and told the others to come inside. Walker, Anderson, and Basford came inside and hid in the basement while Phelps showered upstairs. Phelps met with them in the basement after he had finished showering and told them to wait while he lured Peters to the basement.

[6]     Phelps then asked Peters to come down to the basement to help him find his cigarettes. When Peters came into the basement, Basford hit him in the face with a glass bottle. All four men then began punching Peters in the head and stomach. As Peters lay on the ground, Phelps remained with him while the other three searched the home for valuables. When Peters started moving and trying to stand up, Phelps summoned the others back into the basement and all four of them began to beat Peters with a baseball bat. Phelps found a bottle of bleach and poured it over Peters's face and chest.

[7]     Walker, Anderson, and Basford took Peters's car keys and left the home in Peters's car. They took with them what they had stolen from the house, including watches, wallets, credit cards, a cellphone, and a rifle. Phelps

remained with Peters in the basement. Around 11:00 p.m., Phelps met with others and informed them that he had "finished the job." Tr. p. 971.

[8] The next day, after being contacted by worried family and friends, police found Peters deceased in his basement. It was later determined that Peters had died as a result of blunt force injury to the head. Peters had sustained severe brain injury, skull fractures, and lacerations to his head, as well as countless bruises to his torso and extremities and chemical burns to his chest.

[9] Phelps and the others were later arrested. Phelps was charged with murder, felony murder, and class A felony robbery. In October 2014, following a week-long jury trial, Phelps was found guilty as charged. The trial court entered judgments of conviction on all of the counts, but merged the felony murder conviction with the murder conviction.

[10] The trial court sentenced Phelps to sixty-five years for the murder conviction and twenty years for the class A felony robbery conviction. The trial court chose to run the sentences consecutively in "consideration of the sheer ruthlessness and brutality of what took place, the extreme physical and mental anguish caused to the victim," and because there was "no indication that the Defendant has taken any responsibility or expressed any remorse." Appellant's App. p. 129-30. This resulted in a total term of eighty-five years. Phelps now appeals.

# Discussion and Decision

## I. Double Jeopardy

Article 1, section 14 of the Indiana Constitution provides that "[n]o person shall be put twice in jeopardy for the same offense." Phelps argues that the trial court violated this prohibition by entering judgments of conviction for murder, felony murder, and class A felony robbery. We apply a de novo standard of review when considering whether a defendant has been placed in double jeopardy. *Sloan v. State*, 947 N.E.2d 917, 920 (Ind. Ct. App. 2011).

Two offenses are the same offense for purposes of Article 1, section 14 if, "with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999) (emphases original).

Initially, Phelps and the State agree that the trial court erred in entering judgments of conviction for both murder and felony murder. Our Supreme Court has made clear that a defendant cannot be convicted of both murder and felony murder for a single homicide. *Shields v. State*, 493 N.E.2d 460, 460 (Ind. 1986). Although the trial court merged the murder and felony murder convictions, "[a] trial court's act of merging, without also vacating the conviction, is not sufficient to cure a double jeopardy violation." *Gregory v. State*, 885 N.E.2d 697, 703 (Ind. Ct. App. 2008). A double jeopardy violation is

not remedied by the "practical effect" of concurrent sentences or merger of convictions. *Id.*

[14] To remedy this violation, Phelps argues that we should remand to the trial court with instructions that it vacate his murder conviction. We cannot agree that this is the proper remedy. This Court has previously held that, "when a defendant stands convicted of murder, felony murder, and an additional felony," as is the case here, "the felony murder should be vacated and the murder conviction should remain." *Fuller v. State*, 639 N.E.2d 344, 347 (Ind. Ct. App. 1994). We observed that:

> [t]o hold otherwise would permit a person who commits an intentional murder while committing another felony to use the felony murder rule to escape punishment for the underlying felony. This simply cannot be. When a person intentionally murders a human being while committing another felony, punishment for both the killing and the other felony does not violate double jeopardy principles.

*Id.* at 347-48. We believe that this reasoning is sound and that it applies to the facts of this case. Consequently, on remand, the trial court is instructed to vacate Phelps's conviction for felony murder.

[15] Phelps next argues, and the State once again agrees, that the trial court erred in entering judgments of conviction for both murder and robbery *as a class A felony.* Class A felony robbery is an elevated form of robbery in which the robbery

"results in serious bodily injury to a person other than the defendant." I.C. § 35-42-5-1.[4] "A defendant may not be convicted and sentenced for both Murder and Robbery (Class A) where the act that is the basis for elevating Robbery to a Class A felony is the same act upon which the murder conviction is based." *Moore v. State*, 652 N.E.2d 53, 60 (Ind. 1995). Here, the State charged Phelps with class A felony robbery for robbing Peters after "striking him with a blunt object which resulted in serious bodily injury, to wit; death." Appellant's App. p. 15. Thus, Phelps's act of killing Peters serves as the basis for both his murder conviction and the elevation of his robbery conviction in violation of the double jeopardy prohibition.

[16] The State asks that we remedy this violation by reducing Phelps's robbery conviction to a class B felony. Class B felony robbery is that which "is committed while armed with a deadly weapon or results in bodily injury to any person other than the defendant." I.C. § 35-42-5-1. Once again, the double jeopardy clause prohibits Phelps's act of killing Peters from serving as the "bodily injury" that would elevate his robbery conviction to a class B felony. *Id.* Here, the State argues that, because the evidence shows that Phelps committed multiple acts which inflicted bodily injury upon Peters over a period of time, the jury could have found that he committed class B felony robbery *and then* murdered Peters.

---

[4] We refer to provisions of the Indiana Criminal Code as they existed when Phelps committed the offense. Following amendments that became effective on July 1, 2014, this form of robbery is now a Level 2 felony. Similarly, class B felony robbery is now a Level 3 felony.

[17] But while the State may be correct that the jury *could have* found this, we must inquire as to what the jury actually found. Once again, in this case, the State charged Phelps with class A felony robbery for robbing Peters after "striking him with a blunt object which resulted in serious bodily injury, to wit; death." Appellant's App. p. 15. The jury found him guilty of this charge. It is therefore clear that the jury found Phelps guilty of robbing Peters and causing the injury that led to his death.

[18] However, the jury was not asked to find that Phelps caused any injury to Peters that did not result in his death, as would be required to show that Phelps committed class B felony robbery prior to murdering Peters. Therefore, having not been asked to do so, the jury could not have convicted Phelps in the way that the State proposes. And "[a] person cannot be sentenced for a crime for which that person has not been convicted." *Kingery v. State*, 659 N.E.2d 490, 496 (Ind. 1995).

[19] Because a defendant can also commit class B felony robbery if he commits robbery "while armed with a deadly weapon," had the jury found that Phelps was armed with a deadly weapon, he could be convicted of murder and class B felony robbery without being placed in double jeopardy. *Gross v. State*, 769 N.E.2d 1136, 1139-40 (Ind. 2002). But once again, the jury was not asked to make this finding. While the trial court instructed the jury on class B felony robbery, it made no mention of use of a deadly weapon, saying only that "[t]he offense is a class B felony if it results in bodily injury to any person other than a defendant." Tr. p. 1023. Furthermore, unlike other cases in which courts have

determined that the jury found a defendant guilty of both class A and class B felony robbery, the charging information in this case made no mention of use of a deadly weapon, and instead, relied solely on Phelps's act of killing Peters to elevate the charge. *See Gross*, 769 N.E.2d at 1139.

[20] In sum, while the jury could conceivably have convicted Phelps of murder and class B felony robbery, it was not asked to, and it did not do so. Instead, the jury convicted Phelps of class A felony robbery for having killed Peters while robbing his home, as was specified in the charge. Appellant's App. p. 15. The double jeopardy clause prohibits us from using Phelps's act of killing Peters as the basis for both the murder charge and the "bodily injury" that would be necessary to elevate his robbery offense to a class B felony. I.C. § 35-42-5-1. The jury was not asked to find that Phelps had acted to cause any bodily injury that was not also the cause of Peters's death, nor was it asked to find that Phelps used a deadly weapon.

[21] The jury did find, however, that Phelps committed all the elements of class C felony robbery, which occurs when a person knowingly or intentionally takes property from another person by using, or threatening to use, force, or by putting that person in fear. *Id.* Because a conviction for this class of robbery can stand beside a murder conviction without violating the double jeopardy clause in this case, on remand, the trial court is instructed to vacate Phelps's conviction for robbery as a class A felony and enter judgment of conviction for robbery as a class C felony.

# II. Phelps's Sentence

[22] Phelps next argues that his sentence is inappropriate. Indiana Appellate Rule 7(B) provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." It is the defendant's burden to persuade us that his sentence is inappropriate. *Stokes v. State*, 947 N.E.2d 1033, 1038 (Ind. Ct. App. 2011).

[23] Because we have found that Phelps's class A felony robbery conviction must be reduced to a class C felony, his sentence will need to be revised. When reviewing a sentence under Rule 7(B), we look to the "totality of the penal consequences found in a trial court's sentence." *Davidson v. State*, 926 N.E.2d 1023, 1024 (Ind. 2010). Therefore, in revising Phelps's sentence, we remain mindful of the fact that the trial court found the nature of the offense and his character to warrant a total executed term of eighty-five years imprisonment.

[24] "A person who commits murder shall be imprisoned for a fixed term of between forty-five (45) and sixty-five (65) years, with the advisory sentence being fifty-five (55) years." Ind. Code § 35-50-2-3. As to Phelps's murder conviction, the trial court imposed the maximum sentence of sixty-five years. The trial court also sentenced Phelps to twenty years for his class A felony robbery conviction, but we have determined that this conviction must be reduced to a class C felony. "A person who commits a Class C felony . . . shall

be imprisoned for a fixed term of between two (2) and eight (8) years, with the advisory sentence being four (4) years." I.C. § 35-50-2-6.

[25] As to the nature of his offense, Phelps argues that his actions were not substantially different from those of the codefendants in this case, who received more lenient sentences through plea agreements. However, this argument misses the point, as we are concerned here only with the nature of Phelps's offenses, and we need not compare them with those of his codefendants. *See Dennis v. State*, 908 N.E.2d 209, 214 (Ind. 2009). In its sentencing order, the trial court found Phelps's crime to be particularly heinous, noting that:

> Phelps developed a plan to rob the man who had taken him in when he had nowhere to stay, and given him a job when he had no work or source of income. This was not a senseless act of violence, it was a senseless and cruel death by what can only be termed torture. The testimony at trial was that it was Phelps who lured the victim to the basement. He was there during the initial beating with the baseball bat. When Gerald Peters tried to get up and get away, Phelps called his co-defendants back to the basement so they could beat him again. Phelps stayed in the basement the entire time, watching Peters' suffering and eventual death. Photographs of the scene show blood spatters and smears of blood throughout the basement, evidence that Gerald Peters attempted to get away. Perhaps the most hideous part of this terrible death was when the Defendant, Ryan Phelps, poured bleach in the face of Mr. Peters.

Appellant's App. p. 128-29.

[26] As to his character, Phelps argues that he had a difficult upbringing and that he has struggled with mental illness. The trial court took these circumstances into

account. *Id.* at 128. However, the fact remains that Phelps murdered the very person who was trying to help him with his problems. The trial court also noted that Phelps refused to accept responsibility for what he had done and had not expressed any remorse. *Id.*

[27] We cannot say that the trial court erred in imposing elevated, consecutive sentences under these circumstances. We find the nature of Phelps's offense particularly deplorable given his relationship with Peters and we agree with the trial court that his refusal to accept responsibility or express remorse for his crimes portrays a deep lack of character.

[28] Because Phelps's robbery conviction must be reduced to a class C felony, his sentence must be adjusted accordingly. In light of the fact that the trial court saw fit to impose a total sentence of eighty-five years under these circumstances, we believe it proper to sentence Phelps to a term of eight years for his class C felony robbery conviction, to run consecutively to the term of sixty-five years for his murder conviction. This results in a seventy-three-year aggregate term.

[29] The judgment of the trial court is affirmed in part and reversed in part. The cause is remanded to the trial court with instructions to vacate Phelps's conviction for felony murder and class A felony robbery. The trial court is to enter judgment of conviction for murder and class C felony robbery and to amend the sentence for robbery in accordance with this opinion.

Bailey, J., and Mathias, J., concur.