Dupree SCOTT, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 82A01–0603–CR–105.

Court of Appeals of Indiana.

Nov. 3, 2006.

John Andrew Goodridge, Evansville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant-defendant Dupree Scott ("Scott") appeals his convictions for possession of cocaine as a Class B felony,[1] possession of cocaine as a Class C felony,[2] and carrying a handgun without a license as a Class C felony.[3] We affirm in part and remand in part with instructions.[4]

---

1. Ind.Code § 35–48–4–6(b)(2)(B).

2. Ind.Code § 35–48–4–6(b)(1)(B).

3. Ind.Code § 35–47–2–23(c)(1)(B).

4. We heard oral argument in this case on September 28, 2006, in Indianapolis. We thank counsel for their written and oral advocacy.

### Issues

Scott raises one issue, which we restate as whether the trial court abused its discretion by admitting certain evidence at trial, in violation of the United States Constitution.

In addition, we examine, sua sponte, whether Scott's convictions for possession of cocaine as a Class B felony in conjunction with his simultaneous conviction for possession of cocaine while also possessing a handgun as a Class C felony violate the Indiana Constitution's prohibition against double jeopardy.

### Facts and Procedural History

Officers Jack Spencer ("Officer Spencer") and Jason Cullum ("Officer Cullum"), who were employed by the Evansville Police Department, also worked as off-duty security officers for the Evansville Housing Authority ("EHA"). As EHA officers, Officers Spencer and Cullum were empowered to enforce the rules and regulations of the EHA on the various EHA properties. These rules included restrictions to prevent trespassing, requiring visitors to be with residents at all times while on the property, carry identification, and not to loiter or wander on the property. Notices were posted throughout Erie Homes, an EHA property, informing visitors that loitering and trespassing are prohibited and that visitors are to proceed directly to the unit of the resident they are visiting. Residents of the apartments are given the rules regarding visitors and are required to sign a copy. The EHA had an agreement with the Evansville Police Department that allowed EHA to hire off-duty officers to come onto EHA property to enforce the trespassing rules by requesting identification from individuals loitering on the property. If a person is found violating the no trespassing rule, the officer informs the person of the rule and asks him to leave the property. If the person does not subsequently leave the premises, the officer can arrest the person. Officers are also given a list of individuals who are barred from the property.

On the evening of July 14, 2005, Officers Spencer and Cullum were on patrol in a marked squad car and entered the Erie Homes complex, an EHA property, turning onto Canal Street. The officers observed a group of individuals standing on the north side of Canal Street in the complex, not near any entrance to the complex. Intending to question the group of people and request identification, the officers stopped their car. As soon as the police car pulled into a parking space, the individuals in the group looked up and saw the police car. Immediately, two individuals departed from the group, subsequently splitting up and walking in different directions. Scott was one of these individuals. Scott quickened his pace to a brisk walk as he was leaving the area and continued to glance back at the officers.

The officers exited their car, and Officer Cullum pursued Scott on foot while Officer Spencer pursued the other individual. Officer Cullum called out to Scott to "come back towards me." Transcript at 181. Scott looked back and said, "Who me?", while continuing to walk away from Officer Cullum at a brisk pace. *Id.* Officer Cullum repeated his request, and Scott complied. After Scott turned towards Officer Cullum, he placed his hands in his front pockets. Officer Cullum testified that he did not observe any bulges in Scott's clothing other than where his hands were in the pockets of his baggy pants.

For safety reasons, Officer Cullum instructed Scott to take his hands out of his pockets, so he could see them. In direct contradiction of the instruction, Scott pushed both of his hands deeper into his pockets. Fearing that Scott may have a weapon, Officer Cullum then put Scott in a

chest-to-chest bear hug restraining position to prevent Scott from being able to remove his hands from his pockets. Then Officer Cullum maneuvered Scott to the ground. During the descent, Scott spun so that his back was to Officer Cullum. Upon impact with the ground, a chrome revolver also clattered onto the ground and came to rest to their left.

Officer Cullum yelled, "Gun, gun, gun" to alert his partner, Officer Spencer, of the weapon and then knocked the gun out of reach. At this point, Scott was moving his right arm as if he was throwing something. Officer Cullum grasped Scott's arm and pried open his clenched fist, revealing a tissue containing five to six pieces of what appeared to be cocaine. Placing Scott under arrest, Officer Cullum handcuffed Scott. After a search of the vicinity where Scott and Officer Cullum had landed, additional individually wrapped pieces of what appeared to be cocaine were found. Upon searching Scott after his arrest, a fifty round box of ammunition and some loose rounds were also recovered. The substance suspected to be cocaine found during the incident at Erie Homes was later proven to be cocaine. The entire incident occurred within 1000 feet of Lincoln Elementary School.

In its amended charging information, the State charged Scott with: (1) possession of cocaine as a Class B felony; (2) dealing in cocaine as a Class B felony; (3) possession of cocaine as a Class C felony; (4) carrying a handgun without a license as a Class C felony; and (5) resisting law enforcement as a Class A misdemeanor. On October 19, 2005, Scott filed a Motion to Suppress the physical evidence and any other evidence collected as a result of Scott's detainment and arrest. On October 25, 2005, after holding a hearing the previous day, the trial court denied the motion. During the jury trial, Scott re-

newed his motion to suppress at the start of the trial and again during the testimony of Officer Spencer and Officer Cullum. After the trial, the jury found Scott guilty of all counts except for the fifth, resisting law enforcement. However, the trial court vacated Count 2, dealing cocaine, because it was a lesser-included offense of Count I, possession of cocaine as a Class B felony. The trial court sentenced Scott to the Indiana Department of Correction for an aggregated sentence of six years. Scott now appeals his convictions.

## Discussion

### I. Fourth Amendment

■ Scott argues that the trial court erred when it denied his Motion to Suppress and admitted the evidence resulting from the stop and arrest of Scott claiming the initial encounter with Officer Cullum was an illegal seizure under both the United States and Indiana Constitutions. Because Scott did not seek an interlocutory appeal after the denial of his Motion to Suppress, the issue presented is more appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial. *Washington v. State,* 784 N.E.2d 584, 586–87 (Ind.Ct.App.2003).

#### A. Standard of Review

■ A trial court has broad discretion in ruling on the admissibility of evidence. *Washington,* 784 N.E.2d at 587. Accordingly, we will only reverse a trial court's ruling on admissibility of evidence when the trial court has abused its discretion. *Id.* An abuse of discretion occurs when a trial court's decision is clearly against the logic and effect of the facts and the circumstances before the court. *Id.*

#### B. Analysis

On appeal, Scott argues that the trial court erred in admitting evidence obtained

by law enforcement officers as a result of an illegal seizure. In particular, Scott contends that the State violated his state and federal constitutional rights to be free of unreasonable searches and seizures because the initial encounter between him and Officer Cullum was not voluntary, based on probable cause, or based on reasonable suspicion. Before proceeding, it is important to clarify that Scott does not dispute that Officer Cullum had probable cause to physically restrain him and then subsequently arrest him upon discovering the weapon and cocaine. Therefore, we limit our review to the narrow issue of whether the event of Officer Cullum requesting Scott to stop was an illegal seizure.

Although Scott frames an issue of illegality under the Indiana Constitution, the arguments of both parties truly only address caselaw on the Fourth Amendment to the U.S. Constitution, so we limit our analysis accordingly. At oral argument, contrary to arguments presented in its brief, the State conceded [5] that the initial encounter between Scott and Officer Cullum was not consensual,[6] requiring Officer Cullum to have reasonable suspicion for the stop to comply with the Fourth Amendment. Additionally, the State concurred with Scott that the stop occurred when Scott yielded to the request to stop.

*Terry* set forth the rule that police can briefly detain an individual for investigatory purposes without a warrant if, based on specific and articulable facts, the officer has reasonable suspicion that criminal activity "may be afoot." *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Reasonable suspicion entails some minimal level of objective justification for making a stop, something more than an unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause. *Wilson v. State*, 670 N.E.2d 27, 29 (Ind.Ct.App.1996) (citing *U.S. v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)). Even if the stop is justified, a reasonable suspicion only allows the officer to temporarily freeze the situation for inquiry and does not give him all the rights attendant to an arrest. *Burkett v. State*, 736 N.E.2d 304, 306 (Ind.Ct.App.2000). To evaluate the

---

**5.** To the extent that the State passively raised a foundation for the application of the community caretaking function, announced in *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), it conceded at oral argument that the doctrine should not apply to this case. At this time, Indiana caselaw only applies this doctrine to impounding vehicles.

**6.** There are three levels of police investigation, two that implicate the Fourth Amendment and one that does not. *Overstreet v. State*, 724 N.E.2d 661, 663 (Ind.Ct.App.2000), *reh'g denied, trans. denied*. First, the Fourth Amendment requires that an arrest or a detention for more than a short period of time be justified by probable cause. *Id.* Second, it is well settled Fourth Amendment jurisprudence that the police may, without a warrant or probable cause, briefly detain an individual for investigative purposes if, based on specific

and articulable facts, the officer has a reasonable suspicion that criminal activity "may be afoot." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Accordingly, limited investigatory stops and seizures on the street involving brief questioning and a possible frisk for weapons can be justified by mere reasonable suspicion. *Id.* The seizure of a person in a *Terry* stop does not occur until "the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Wilson v. State*, 670 N.E.2d 27, 30 (Ind.Ct.App. 1996) (citing *Terry*, 392 U.S. at 20, n. 16, 88 S.Ct. 1868). Finally, the third level of investigation occurs when a law enforcement officer makes a casual and brief inquiry of a citizen, which involves neither an arrest nor a stop. *Id.* In this type of "casual encounter," no Fourth Amendment interest is implicated. *Id.*

validity of a stop, the totality of the circumstances must be considered. *Id.* Although the standard of review of a trial court's decision to admit evidence is whether there was an abuse of discretion, the determination of reasonable suspicion is reviewed *de novo.* *Id.*

Scott contends that Officer Cullum did not possess any particularized suspicion that Scott was engaged in, about to engage in, or had engaged in criminal activity because Officer Cullum did not recognize Scott as an individual banned from the property nor did he observe circumstances that would lead him to believe Scott was trespassing. According to Scott, the only circumstances Officer Cullum observed were that he was in a high crime area and that Scott turned and walked away from the officers as they approached the group of individuals. Scott claims that together these circumstances do not rise to the level of reasonable suspicion. Furthermore, Scott argues that his action of walking away from the officers did not amount to flight and that the characterization by the State of Scott's pace as brisk is meaningless.

Scott cites several cases supporting the premise that an individual turning and walking away from approaching law enforcement, or similar actions, in a high crime area does not establish reasonable suspicion. *Williams v. State,* 477 N.E.2d 96 (Ind.1985) (finding the officer lacked reasonable suspicion to make an investigatory stop where defendant was walking in a high crime area at 1:30a.m. carrying a package), *reh'g denied; Tumblin v. State,* 664 N.E.2d 783, 785 (Ind.Ct.App.1996) (holding that "the color of one's skin, the neighborhood one happens to be in, and the fact that one turns away from police are not sufficient, individually or collectively, to establish a reasonable suspicion of criminal activity"); *Reeves v. State,* 666 N.E.2d 933 (Ind.Ct.App.1996) (finding that defendant waiving to an officer while his companion looked away as officer passed them in a high crime area in the afternoon did not create a reasonable suspicion of criminal activity); *Webb v. State,* 714 N.E.2d 787 (Ind.Ct.App.1999) (holding that defendant's actions of turning away from police and appearing to put something down his pants was not sufficient to justify an investigatory stop); *Polk v. State,* 739 N.E.2d 666 (Ind.Ct.App.2000) (finding that defendant walking in high crime area and turning and walking away from police as they passed him did not rise to the level of reasonable suspicion).

The State argues that the nature of the property on which Scott was confronted is critical in distinguishing this case from past precedent. We agree. The Erie Homes EHA property is private property. Public property was the basis of discussion in the cases cited by Scott.

Contrary to the rights an individual has to remain free from intrusion in public spaces, those same rights do not carry over to private property. Intruding upon private property constitutes criminal trespass when one who, not having a contractual interest in the property, enters the property of another after having been denied entry. Ind.Code § 35–43–2–2(a)(1). Entry can be denied by posting a notice at the main entrance of the property. I.C. § 35–43–2–2(b)(2).

EHA had posted several signs throughout the Erie Homes property forbidding trespassing and loitering. Some of these signs were visible from where the individuals were standing when the police pulled up. Thus, the officers, under the contract with the EHA, had the right to stop the individuals standing on EHA property and inquire about their interest in the property.

Because this was private property and the officers were acting as agents of the property owner, the Fourth Amendment was not implicated in the stop. Therefore, the trial court did not abuse its discretion in admitting the evidence resulting from the stop and subsequent arrest of Scott.

## II. Double Jeopardy

We next address, sua sponte, the issue of whether Scott's multiple convictions and sentences subjected him to double jeopardy for the same offense. We do so because a double jeopardy violation, if shown, ensnares fundamental rights. *Cuto v. State*, 709 N.E.2d 356, 361 (Ind.Ct. App.1999). Scott was convicted of Class B felony possession of cocaine based upon his possession of the same cocaine that supported the Class C felony conviction. Each of these convictions is based on Ind. Code section 35–48–4–6. Section (b) enhances the possession charge because the possession is within 1000 feet of school property and can also enhance the possession charge if the accused is in possession of a handgun.

Article I, Section Fourteen of the Indiana Constitution provides that "no person shall be put in jeopardy twice for the same offense." Our Supreme Court recently concluded that possession of cocaine is a crime that is defined in such a way "that a circumstance is not an element of a crime, but can enhance the penalty." *Hardister v. State*, 849 N.E.2d 563, 575 (Ind.2006). The Court specifically addressed the statute under which Scott's two convictions for possession of cocaine were charged:

Indiana Code section 35–48–4–6(a) (2004) defines the actus reus of the crime as the act of possession. Subsection (a) defines the base crime-the knowing or intentional possession of cocaine-as a Class D felony. Subsection (b) provides that the crime is elevated to a Class C felony if "the person was also in possession of a firearm." Subsection (b) also provides that the base crime is elevated to a Class B or A felony if other circumstances, not applicable here, are present. These circumstances are enumerated in subsection (b) (the amount of drug involved; possession on a school bus; proximity to schools, parks, housing complexes, and youth centers), and are factors that enhance the punishment for the possession but do not establish separate crimes. The additional circumstance relied on here-possession of a firearm-is of course a fact necessary to conviction of the elevated crime, and therefore must be found by a jury under *Apprendi v. New Jersey*, 530 U.S. 466, 476, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In that limited sense, possession of a firearm is an "element" of the elevated crime. But because possession of a firearm serves only to enhance the penalty for Class D possession of cocaine that is committed without possession of a firearm, possession of a firearm does not establish a separate crime.

*Id.*

In the case at hand, Scott was convicted for two counts of possession, using the same cocaine, but each count was enhanced by a separate additional circumstance: proximity to a school and possessing a handgun. These are separate circumstances for enhancement, but not separate crimes. Indiana's double jeopardy clause prohibits the State from proceeding against a defendant twice for the same criminal transgression. *Polk v. State*, 783 N.E.2d 1253, 1258 (Ind.Ct.App. 2003), *trans. denied.* Accordingly, we remand to the trial court to vacate the Class C felony possession of cocaine.

## Conclusion

Based on Officer Cullum acting as an agent of the property owner and Scott loitering on private property in violation of

posted no trespassing or loitering signs, the Fourth Amendment was not implicated when Officer Cullum stopped Scott. Therefore, the trial court did not abuse its discretion in admitting the evidence resulting from the stop and subsequent arrest of Scott. Upon sua sponte review, we find that Scott's two convictions of possession of cocaine violate the Indiana Constitution's prohibition of double jeopardy because the convictions are not separate crimes.

Affirmed in part; remanded with instructions.

RILEY, J., and MAY, J., concur.