# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**PATRICIA CARESS MCMATH**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN L. REITZ**
Deputy Attorney General
Indianapolis, Indiana



FILED

Nov 15 2012, 9:15 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DEREK CLANTON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  49A02-1203-CR-198 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Jose D. Salinas, Judge
Cause No. 49G14-1104-FD-30375

**November 15, 2012**

**OPINION – FOR PUBLICATION**

**BAKER, Judge**

Derek Clanton was found in possession of cocaine after he was stopped and searched by an off-duty police officer who was working part-time as a security officer for an apartment complex in a high crime area of Indianapolis. The cocaine was in a small plastic bag stuffed into a pen cap, and it was discovered after the officer removed the pen cap from Clanton's pocket during a patdown of Clanton for weapons.

Claiming the cocaine was found during an unreasonable search and seizure in violation of the United States and Indiana Constitutions, Clanton filed a motion to suppress. The trial court denied the motion, and following a bench trial, Clanton was subsequently convicted of Possession of Cocaine, a class D felony.[1]

We conclude that the trial court erred when it admitted the cocaine into evidence because the arresting officer was not entitled to further search the contents of the pen cap after determining that the pen cap was not a weapon. Because we find this issue to be dispositive, we do not specifically address whether the initial stop and patdown were proper under the circumstances presented here. In reaching this decision, however, we also conclude that the Fourth Amendment does not categorically fail to apply to off-duty police officers working as security officers on private property.

Accordingly, we reverse the judgment of the trial court.

---

[1] Ind. Code § 35-48-4-6.

FACTS

On April 29, 2011, Officer Michael Price and Officer McFadden[2] of the Indianapolis Metropolitan Police Department (IMPD) were off duty and working part-time as security officers for an apartment complex in Marion County. The apartment complex, which Officer Price later testified is "not well lit" and in "a very well known high crime area [with a] lot of guns, a lot of weapons in that area at all times[,]" employed the officers in part to enforce its strict no-loitering policy on its property.[3] Tr. p. 5. Although the officers were off duty and purportedly working solely for the apartment complex, they wore their full IMPD uniforms and carried their IMPD-issued sidearm revolvers and tasers. The officers were also equipped with their department radios, which enabled them to "contact anyone in the city by radio." Id. at 12.

At approximately 11:15 p.m., Officer Price and Officer McFadden were patrolling the apartment complex on foot when they observed three black men, one of whom was Clanton, standing outside a resident's doorway for roughly five to fifteen seconds. Believing the men to be loitering, the officers immediately approached them. The men turned their backs as the officers approached. One of the officers asked what the men were doing, and Officer Price later testified that he could not recall whether he or Officer

---

[2] The officer who was working with Officer Price was referred to as Officer McFadden during the suppression hearing but as Officer Garrison at Clanton's trial.

[3] According to Officer Price, the apartment complex's no-loitering policy is written into its bylaws which every resident is required to review. However, there is no evidence in the record that suggests that Clanton was a resident of the apartment complex or otherwise aware of the no-loitering policy. There was also no evidence presented indicating that there are any no-loitering signs posted at the apartment complex that would have alerted Clanton of this policy.

McFadden also verbally identified themselves as police officers at that time. One of the men fled on foot, and Officer McFadden gave chase.

The other two men, including Clanton, remained and followed all of Officer Price's directions. Neither made any furtive movements or threatened Officer Price in any way. Nonetheless, Officer Price "immediately" withdrew his taser and instructed both men to place their hands on the wall. Tr. p. 10. He then proceeded to perform a patdown search of each man for weapons.

When Officer Price patted down Clanton, he felt a sharp object in Clanton's right front pocket. Officer Price could not determine the identity of the object while it was in Clanton's pocket, so he removed the object. Officer Price then saw that the object was a pen cap. Inside the pen cap was a clear plastic baggie, which Officer Price removed, and inside the baggie was a white powder that Officer Price believed to be narcotics. Officer Price then arrested Clanton.

Clanton was charged with possession of cocaine as a class D felony, and Clanton filed a motion to suppress the cocaine from being admitted as evidence at his trial. On December 1, 2011, the trial court held an evidentiary hearing during which Officer Price testified about the events leading up to Clanton's arrest. About his initial reason for performing the patdown searches, Officer Price testified:

> [W]hen you have two officers there, you kind of feel like you have a little bit more control. Once [Officer McFadden] was gone and one of the suspects fled, I immediately become more aware that the situation is going from, you know, good to worst and now I'm left alone with two individuals. So, what I did was immediately . . . pull my taser out to try to

4

show that, you know, I'm going to keep them under control and have them put their hands on the wall. And I went to pat-down [sic] one individual as the other one, you know, had his hands on the wall and I did that for both of them.

Tr. p. 10.

The following colloquy took place later in the hearing regarding Officer Price's removal of the pen cap from Clanton's pocket and the subsequent discovery of the cocaine:

| [Officer Price:] | Well, once I pulled it out I realized what . . . the sharp object was but upon further investigation and looking at it, I seen [sic] a clear plastic baggie that, you known, obviously wasn't stuffed down in there, it was hanging out of the pen cap. And amongst looking at that, after -- I realize there's a white powdery substance in that and that's when, through my training and experience, [I] realized that's a compound. |
|---|---|
| [State:] | So once you pulled the pen cap out of the pocket was it immediately apparent that there were narcotics in [it?] |
| [Officer Price:] | Yes, yes, like I say, because it was hanging out of the pen cap. |

Id. at 11.

On cross-examination, the following exchange took place:

| [Defense counsel:] | And when you pulled it out you realized it was the top to a pen? |
|---|---|
| [Officer Price:] | Yes. |
| [Defense counsel:] | And it wasn't until you inspected it that you found that there was contraband inside? |

5

| [Officer Price:] | Well, I mean, it's immediately apparent that there's [sic] baggies inside it which is automatically, you know, we see that multiple times. |
| --- | --- |
| [Defense counsel:] | When you pulled it out you didn't know what was inside the pen cap? |
| [Officer Price:] | <u>No I wouldn't have been able to tell you what was inside it no.</u> |

<u>Id.</u> at 18 (emphasis added).

The trial court denied Clanton's motion to suppress. At the bench trial held on March 1, 2012, Clanton renewed his motion to suppress and objected to the admission of the cocaine into evidence. At trial, Officer Price testified, "[I] could immediately see a clear baggie that was stuffed into [the pen cap] and the excess was hanging out of the pen cap. <u>But I didn't know what was in the baggie.</u>" <u>Id.</u> at 47-48 (emphasis added). He further stated, "I noticed the clear baggie that was stuffed into the pen cap with a lot of excess bag hanging out which I've seen in the past . . . used to carry narcotics." <u>Id.</u> at 51.

The trial court overruled Clanton's objection to the admissibility of the evidence and found him guilty as charged of possession of cocaine as a class D felony. Clanton now appeals.

DISCUSSION AND DECISION

I. Standard of Review

A trial court has broad discretion in ruling on the admissibility of evidence. <u>Shinault v. State</u>, 668 N.E.2d 274, 276 (Ind. Ct. App. 1996). We will reverse a trial court's ruling on admissibility of evidence only when an abuse of discretion has occurred.

6

Scott v. State, 855 N.E.2d 1068, 1071 (Ind. Ct. App. 2006). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. Id.

## II. Admissibility of Cocaine—Search and Seizure

As noted above, Clanton argues that the cocaine should not have been admitted into evidence at his trial because the officer's seizure of it violated his constitutional right to be free from unreasonable searches and seizures. Indeed, both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution guarantee this right.[4] Notwithstanding the nearly identical text of these guarantees, the very same police behavior could be reasonable under the federal constitution and unreasonable under the state constitution, or vice versa, because each has a distinct reasonableness analysis. See Litchfield v. State, 824 N.E.2d 356, 361 (Ind. 2005) (explaining that the federal guarantee focuses on one's reasonable expectation of privacy and setting out a three-factor balancing test for assessing reasonableness under the Indiana Constitution).

Nevertheless, evidence obtained by police action in violation of either constitution is inadmissible. See Terry v. Ohio, 392 U.S. 1, 12 (1968) (explaining that the federal

---

[4] The text of the Fourth Amendment, which the Indiana Constitution parallels nearly verbatim, is as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

7

exclusionary rule is a "principal mode of discouraging unlawful police conduct"); Grier v. State, N.E.2d 443, 445 (Ind. 2007) (holding that the Indiana Constitution requires suppression of evidence discovered during an unconstitutional search).[5] We review de novo the ultimate question of whether the right to be free from unreasonable searches and seizures was violated. Howard v. State, 862 N.E.2d 1208, 1210 (Ind. Ct. App. 2007).

## A. The Federal Constitution Claims

Clanton contends that the initial stop was not justified because the officers could not reasonably suspect him of loitering or otherwise being engaged in criminal activity merely because he was standing outside a doorway for five to fifteen seconds with two other black males. Appellant's Br. p. 7-8. He also contends that there was no basis for Officer Price to suspect that he was armed and dangerous to justify the patdown for weapons when he fully complied with Officer Price's instructions and made no furtive or threatening actions and that, even if both the initial stop and patdown were proper, the subsequent search exceeded the scope of a valid frisk under Terry. Id. at 11, 13.

Generally, unless an exception applies, searches and seizures performed without a warrant are "per se unreasonable under the Fourth Amendment." Shinault, 668 N.E.2d at 276 (citing Thompson v. Louisiana, 469 U.S. 17, 19-20 (1984)) (emphasis in original). The United States Supreme Court recognized one such exception to the warrant requirement in Terry v. Ohio in holding that a police officer may briefly stop a person on

---

[5] Because we reverse Clanton's conviction on the basis that he was subjected to an unreasonable search under the Fourth Amendment, we do not reach Clanton's claim that the search and seizure were unreasonable under Article 1, Section 11 of the Indiana Constitution. See Reinhart v. State, 930 N.E.2d 42, 48 n.1 (Ind. Ct. App. 2010).

8

less than probable cause if the officer reasonably suspects that "criminal activity may be afoot." 392 U.S. at 30. Moreover, Terry held that if the officer reasonably suspects that the stopped person may be armed and dangerous, the officer may "conduct a carefully limited search of the outer clothing" of the individual for the sole purpose of locating weapons that could be used against the officer. Id. However, this limited search is intended only to satisfy an officer's peace of mind that an individual is not armed so that the officer can safely make inquiries of the individual at close range; it is not intended to give officers free reign to conduct an unbridled search for any contraband a person may be carrying. Minnesota v. Dickerson, 508 U.S. 366, 373 (1993). Whether a Terry stop or frisk is justified, as well as the accepted degree and scope of these limited exceptions to the warrant requirement, is based upon the totality of the circumstances. Illinois v. Wardlow, 528 U.S. 119, 136 (2000).

### 1. Applicability of the Fourth Amendment to Off Duty Police Officers Acting as Security Guards

Before proceeding to the merits of Clanton's claims, we will first address the State's contention that the Fourth Amendment was not implicated by Officer Price's actions. See Scott, 855 N.E.2d at 1073-74 (finding that an off-duty police officer working as a security guard on private property was entitled to stop a suspected loiterer and inquire about his interest in the property without implicating the Fourth Amendment). To be sure, there are some situations where the actions of police officers are not implicated by the Fourth Amendment. See Clarke v. State, 869 N.E.2d 1114,

9

1118 (Ind. 2007) (quoting Florida v. Bostick, 501 U.S. 429, 434 (1991)) (explaining that "the Fourth Amendment is not triggered unless an encounter between a law enforcement officer and a citizen 'loses its consensual nature'").

Whether or not a police officer's actions are subject to the Fourth Amendment while the officer is off duty depends on the "nature of the acts" that the officer is performing. See Tapp v. State, 406 N.E.2d 296, 302 (Ind. Ct. App. 1980) (finding that an out-of-uniform, off-duty police officer working as private security was performing his official law enforcement duties when he identified himself as a police officer, displayed his badge, and advised a woman she was under arrest pursuant to Indiana law). In this instance, the record demonstrates that Officer Price was acting as a law enforcement officer during this investigation. More specifically, Officer Price was wearing his full police uniform, complete with his badge, gun, taser, and radio. Tr. p. 12-13. Although Officer Price may not have verbally identified himself as a police officer, id. at 36, 43, it seems likely that someone being approached by two men wearing full police uniforms would assume that the men were acting in a state-sanctioned law enforcement capacity and not as security officers for the apartment complex. Moreover, after one of Clanton's companions fled, Officer Price ordered the two remaining men to put their hands on the wall and performed a patdown search of the men while brandishing his taser for officer safety. Id. at 10. These actions are consistent with Officer Price's law enforcement training, but they would not otherwise be available to a private security guard. See Lemon v. State, 868 N.E.2d 1190, 1193-96 (Ind. Ct. App. 2007). Thus, we conclude that

10

although Officer Price was off duty and on private property, the Terry stop and frisk effectuated by Officer Price comes within the auspices of Fourth Amendment protections.

## 2. The Stop and Frisk

Clanton challenges the propriety of the officers' initiation of the stop and the subsequent patdown, claiming that these actions were improper under the Fourth Amendment. However, we need not address these contentions because, for the reasons discussed below, we find that the search of the pen cap exceeded the parameters that Terry and its progeny permit.[6]

As noted above, the purpose of a protective search authorized by Terry "is not to discover evidence of a crime, but rather to allow the officer to pursue his investigation without fear of violence." Dickerson, 508 U.S. at 373. During this limited search, an officer is permitted to remove an item that feels like a weapon from an individual's outer clothing to determine whether the item is in fact a weapon. Shinault, 668 N.E.2d at 277. In addition, the "plain-feel doctrine" approved by Dickerson permits an officer to remove non-weapon contraband during a Terry frisk if the contraband is detected during an initial patdown for weapons and if the incriminating nature of the contraband is immediately ascertained by the officer. Harris v. State, 878 N.E.2d 534, 538-39 (Ind. Ct. App. 2007).

---

[6] Although we do not reach the merits of these claims, we caution that "[t]he color of one's skin, the neighborhood one happens to be in, and the fact that one turns away from the police are not sufficient, individually or collectively, to establish a reasonable suspicion of criminal activity." Tumblin v. State, 664 N.E.2d 783, 785 (Ind. Ct. App. 1996).

However, our Supreme Court has held that "the reasonable suspicion which gives authority to a Terry stop does not, without more, authorize the examination of contents of items carried by the suspicious person." Berry v. State, 704 N.E.2d 462, 466 (Ind. 1998). Thus, if an officer determines that an item is not a weapon and the officer cannot immediately ascertain whether or not the item is contraband, the search of that item must stop. See, e.g., Granados v. State, 749 N.E.2d 1210, 1215 (Ind. Ct. App. 2001) (holding that an illegal search occurred when an officer discovered cocaine by unfolding a five-dollar bill that had fallen from an individual's sock during a patdown for weapons because "[o]nce the five-dollar bill fell to the ground, [the officer] could have simply covered the bill with his shoe or kicked it out of reach and completed his patdown search . . . without fear of being injured by any weapons it may have contained").

Clanton contends that Officer Price went beyond the permissible scope of a Terry frisk when, after removing the pen cap from Clanton's pocket, he determined that the item was not a weapon but continued to examine it, ultimately discovering that the pen cap held a baggie containing cocaine.[7] Appellant's Br. p. 13. In support of this proposition, Clanton directs us to Harris and Jackson v. State, 669 N.E.2d 744 (Ind. Ct. App. 1996). Appellant's Br. p. 12-13. In each of these cases, an officer was justified in removing a pill bottle from an individual's outer clothing on the basis that the hard object felt by the officer might be a weapon. Harris, 878 N.E.2d at 538; Jackson, 669 N.E.2d at

---

[7] As an aside, we note that Clanton concedes, and we agree, that if the initiation of the patdown was proper, Officer Price would have been justified in removing a sharp item from his outer clothing to dispel his fear that the item could be used as a weapon. Appellant's Br. p. 13.

12

748. However, the officer in each case then overstepped the bounds of Terry by further manipulating the pill bottle, which in turn led to the discovery of cocaine. Harris, 878 N.E.2d at 537, 539; Jackson, 669 N.E.2d at 746, 749.

In our view, the dispositive fact is not whether a container is open or closed, but whether the illicit nature of an item was immediately apparent to the officer or apparent only through further manipulation. See Dickerson, 508 U.S. at 379 (analogizing the plain-feel doctrine to the plain-view doctrine as limited by Arizona v. Hicks, 480 U.S. 321 (1987), which held that the moving of stereo equipment to check serial numbers was an impermissible search under the Fourth Amendment absent probable cause to suspect the equipment was stolen when "the incriminating character of the stereo equipment was not immediately apparent").

Here, once Officer Price discovered that the sharp item in Clanton's pocket was a pen cap, he had dispelled his suspicion that the item was a weapon. Indeed, Officer Price testified that he kept the pen cap, searched it, and seized its contents because, "upon further investigation and looking at it," he saw a baggie hanging from the pen cap, and based on previous experiences of finding narcotics in baggies in pen caps, he suspected that this baggie contained narcotics. Tr. p. 11, 18, 47-48, 51. Officer Price also admitted numerous times that he could not tell what was inside the baggie when he first observed it hanging out of the pen cap. Id. at 18, 48. In fact, Officer Price realized that the baggie contained cocaine only upon closer examination. Id. at 11. Thus, like in Harris and Jackson where the illicit nature of the pill bottles was not immediately apparent to the

13

investigating officers, here the contraband nature of the contents of the pen cap was not immediately apparent to Officer Price. As a result, the discovery of the cocaine violated Clanton's right to be free from unreasonable searches under the Fourth Amendment, and the trial court erred in admitting the cocaine into evidence. Thus, Clanton's conviction cannot stand.

The judgment of the trial court is reversed.

ROBB, C.J., concurs.

BRADFORD, J., concurs in part and dissents in part with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DEREK CLANTON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1203-CR-198 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

**BRADFORD, Judge, concurring in part and dissenting in part.**

I agree with the majority that the stop conducted by Officer Smith implicated the constitutional protections provided by the Fourth Amendment and Article I, Section 11. However, I do not believe that either the stop or the subsequent search violated those constitutional protections. As such, I concur in part and respectfully dissent in part.

## I. Admission of Evidence

Clanton contends that the trial court abused its discretion in admitting the evidence stemming from the allegedly unconstitutional stop and search of his person.

> Our standard of review for rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by an objection at trial. *Ackerman v. State*, 774 N.E.2d 970, 974-75 (Ind. Ct. App. 2002), *reh'g denied*, *trans. denied*. We do not reweigh the evidence, and we consider conflicting evidence most favorable

15

> to the trial court's ruling. *Collins v. State*, 822 N.E.2d 214, 218 (Ind. Ct. App. 2005), *trans. denied*. We also consider uncontroverted evidence in the defendant's favor. *Id*.

*Cole v. State*, 878 N.E.2d 882, 885 (Ind. Ct. App. 2007).

A trial court has broad discretion in ruling on the admissibility of evidence. *Washington v. State*, 784 N.E.2d 584, 587 (Ind. Ct. App. 2003) (citing *Bradshaw v. State*, 759 N.E.2d 271, 273 (Ind. Ct. App. 2001)). Accordingly, we will reverse a trial court's ruling on the admissibility of evidence only when the trial court abused its discretion. *Id*. (citing *Bradshaw*, 759 N.E.2d at 273). An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id*. (citing *Huffines v. State*, 739 N.E.2d 1093, 1095 (Ind. Ct. App. 2000)).

Clanton argues that the trial court abused its discretion in admitting the evidence stemming from the stop because the evidence was discovered in violation of his constitutional rights under both the Fourth Amendment and Article I, Section 11. In raising these claims, Clanton challenges the legality of both the stop and the subsequent warrantless search of his person.

### A.  The Fourth Amendment

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches or seizures shall not be violated." The Fourth Amendment prohibits unreasonable searches and seizures. *Burkes v. State*, 842 N.E.2d 426, 429 (Ind. Ct. App. 2006), *trans. denied*.

16

> The Fourth Amendment regulates nonconsensual encounters between citizens and law enforcement officials and does not deal with situations in which a person voluntarily interacts with a police officer. A full-blown arrest or a detention that lasts for more than a short period of time must be justified by probable cause. A brief investigative stop may be justified by reasonable suspicion that the person detained is involved in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 31, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

*Finger v. State*, 799 N.E.2d 528, 532 (Ind. 2003). A police officer may stop and briefly detain a person for investigative purposes under *Terry* so long as the officer has a reasonable suspicion, supported by articulable facts, that criminal activity may be afoot. *Bratcher v. State*, 661 N.E.2d 828, 830 (Ind. Ct. App. 1996) (citing *Terry*, 392 U.S. 1).

### 1. Legality of the Stop

Because stopping an individual and limiting his freedom to leave is a seizure under the Fourth Amendment, "police may not initiate a stop for any conceivable reason, but must possess at least reasonable suspicion that a traffic law has been violated or that other criminal activity is taking place." *Meredith v. State*, 906 N.E.2d 867, 869 (Ind. 2009). Reasonable suspicion exists where the facts known to the officer at the moment of the stop, together with the reasonable inferences arising therefrom, would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur. *Burkes*, 842 N.E.2d at 429-30. In deciding whether there was reasonable suspicion for a stop, we look to the totality of the circumstances of a given case. *Id*. at 430.

17

In the instant matter, the record demonstrates that at the time of the stop, Officer Price had reasonable suspicion to believe that Clanton was engaging in criminal activity. Officer Price was working security for the apartment complex located in a high crime area when he saw Clanton and two other men standing outside an apartment door in violation of the apartment complex's "no loitering" policy. *See Ross v. State*, 844 N.E.2d 537, 542 (Ind. Ct. App. 2006) (providing that presence in a high crime area is a factor that can be considered at the time of the stop); *see also Parker v. State*, 662 N.E.2d 994, 999 (Ind. Ct. App. 1996) (providing that officer had reasonable suspicion to stop and pat-down individual because officer knew that the area was known for frequent drug activity, and that firearms were frequently present in drug transactions). Officer Price was familiar with the apartment complex's "no loitering" policy, and he testified that the sole purpose of his presence at the apartment complex was to enforce the "no loitering" policy. The record does not contain any evidence suggesting that Clayton and the other men had a valid purpose for standing outside the apartment door.

As Officer Price and another officer approached the three men, the men turned their backs on the officers and one man fled the scene. The flight by one of the three men raised Officer Price's suspicion that the men, who were loitering at 11:15 p.m. in an area known to have high levels of crime and drug activity, were engaged in criminal activity. *See Platt v. State*, 589 N.E.2d 222, 226 (Ind. 1992) (providing that flight at the sight of police is undeniably suspicious behavior). In addition, the other officer's act of following the fleeing man left Officer Price outnumbered by two unknown individuals. Officer

18

Price witnessed a violation of the "no loitering" policy and the flight by one of the individuals standing with Clanton before initiating the stop. As such, I would conclude that the stop was valid and did not violate Clanton's rights under the Fourth Amendment. *See Burkes*, 842 N.E.2d at 430.

## 2. Legality of Search

Having concluded that the initial stop did not violate Clanton's Fourth Amendment rights, we must consider whether the subsequent search of his person was permissible.

> A judicially issued search warrant is a condition precedent to a lawful search. "Searches conducted outside the judicial process are per se unreasonable unless subject to a few well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). The state has the burden of demonstrating the existence of one of these exceptions. One such exception to the warrant requirement is: when a police officer makes a *Terry* stop, if he has reasonable fear of danger, he may conduct a carefully limited search of the outer clothing of the suspect in an attempt to discover weapons that might be used to harm him. *Shinault v. State*, 668 N.E.2d 274, 277 (Ind. Ct. App. 1996). An officer's authority to conduct a pat down search is dependent upon the nature and extent of his particularized concern for his safety. *Wilson v. State*, 745 N.E.2d 789, 792 (Ind. 2001).

*Williams v. State*, 754 N.E.2d 584, 587-88 (Ind. Ct. App. 2001). In conducting a *Terry* search, the officer need not be absolutely certain that an individual is armed but only that a reasonably prudent man in the same circumstances would be warranted in believing that his safety or that of others was in danger. *Bratcher*, 661 N.E.2d at 831 (citing *Terry*, 392 U.S. at 27).

19

Here, Officer Price testified that he conducted a limited pat-down search of Clanton's outer clothing because he feared that Clanton could be armed. Again, Officer Price and another officer encountered three men loitering outside an apartment door at 11:15 p.m. in an area known to be an area with high crime and drug activity. As the officers approached, the three men turned their backs on the officers and one man fled. Officer Price was out-numbered by two unidentified individuals after the other officer followed the fleeing man. *See Commonwealth v. Mack*, 953 A.2d 587, 591 (Pa. Super. Ct. 2008) (providing that the fact that an officer may be outnumbered is certainly a factor to be considered when determining whether an officer's safety is at risk). The flight by the third man raised Officer Price's suspicion that the three men might be armed or engaged in criminal activity. Officer Price testified that in light of Clanton's act of loitering in a high crime area at 11:15 p.m., Officer Price felt it necessary to conduct the outer clothing pat-down search in order to determine whether Clanton was armed. In light of the above-stated circumstances, I would conclude that Officer Price had a reasonable fear for his safety that warranted the pat-down search.

Moreover, I do not agree that Officer Price exceeded the scope of the initial search by pulling the plastic out of the pen cap, revealing the cocaine. The record demonstrates that during the outer-clothing pat-down search, Officer Price felt a sharp object in Clanton's pocket. Believing that the sharp object could potentially be used as a weapon, Officer Price removed the object from Clanton's pocket, identified it as a pen cap, and immediately saw plastic sticking out of the pen cap. The plastic that was stuffed into the

20

pen cap was immediately apparent to Officer Price. Furthermore, although it was not immediately apparent what specific drug was stored in the plastic bag in the pen cap, Officer Price testified that in his experience as a police officer, he was aware that individuals often store drugs in plastic bags stuffed in pen caps. As such, I would conclude that Officer Price did not exceed the scope of the original pat-down search by removing the plastic from the pen cap and seizing the cocaine contained within. *See Williams*, 754 N.E.2d 588 (providing that a police officer may seize contraband if, during a lawful pat down of a suspect's clothing, he feels an object whose contour or mass makes its identity immediately apparent).

## B. Article I, Section 11

With respect to Article I, Section 11, Clanton again argues that the evidence discovered during search of his person should have been excluded from trial because the evidence is the fruit of an illegal stop and warrantless search of his person.

> Article I, Section 11 provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated...." The purpose of this article is to protect from unreasonable police activity those areas of life that Hoosiers regard as private. *Moran v. State*, 644 N.E.2d 536, 540 (Ind. 1994). The provision must receive a liberal construction in its application to guarantee the people against unreasonable search and seizure. *Brown v. State*, 653 N.E.2d 77, 79 (Ind. 1995). In resolving challenges asserting a Section 11 violation, courts must consider the circumstances presented in each case to determine "whether the police behavior was reasonable." *Id*. We place the burden on the State to show that under the totality of the circumstances its intrusion was reasonable. *State v. Bulington*, 802 N.E.2d 435, 438 (Ind. 2004).

*State v. Quirk*, 842 N.E.2d 334, 339-40 (Ind. 2006). Thus, we are called upon to determine whether the stop and subsequent pat down search were reasonable under the totality of the circumstances. *See id*. at 340.

### 1. Legality of the Stop

In Indiana, it is well-settled that a police stop and brief detention of an individual is reasonable and permitted under Article I, Section 11 if the officer reasonably suspects that the individual engaged in, or is about to engage in, illegal activity. *See Quirk*, 842 N.E.2d at 340 (citing *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001)).

> A stop is lawful if there is an objectively justifiable reason for it, and the stop may be justified on less than probable cause. [*Jackson v. State*, 785 N.E.2d 615, 619 (Ind. Ct. App. 2003), *trans. denied*.] If there is an objectively justifiable reason, then the stop is valid whether or not the police officer would have otherwise made the stop but for ulterior suspicions or motives. *Id*.

*Turner v. State*, 862 N.E.2d 695, 699-700 (Ind. Ct. App. 2007).

For the reasons discussed above, I believe that Officer Price had an objectively justifiable reason for stopping Clanton. Officer Price had specific knowledge of the apartment complex's "no loitering" policy, and he testified that the sole reason for his presence at the apartment complex was to enforce that policy. Officer Price and another officer observed Clanton and two other men violating the policy by loitering outside an apartment door in an area known to have a high level of crime and drug activity. *See Ross*, 844 N.E.2d at 542 (providing that presence in a high crime area is a factor that can be considered at the time of the stop); *see also Parker*, 662 N.E.2d at 999 (providing that

22

officer had reasonable suspicion to stop and pat-down individual because officer knew that the area was known for frequent drug activity, and that firearms were frequently present in drug transactions). Nothing in the record indicated that the men had a valid purpose for standing outside the apartment door. As Officer Price and the other officer approached the three men, the men turned their backs on the officers and one man fled the scene, leaving Officer Price outnumbered by the two unknown men. Again, the flight by one of the men raised Officer Price's suspicion that the men were engaged in criminal activity. *See Platt*, 589 N.E.2d at 226 (providing that flight at the sight of police is undeniably suspicious behavior). Because I believe that these circumstances give Officer Price a justifiable reason for stopping Clanton, I would conclude that the stop was valid and did not violate Clanton's rights under Article I, Section 11.

## 2. Legality of the Search

"While almost identical to the wording in the search and seizure clause of the federal constitution, Indiana's search and seizure clause is independently interpreted and applied." *Baniaga v. State*, 891 N.E.2d 615, 618 (Ind. Ct. App. 2008). Under the Indiana Constitution, the legality of a governmental search turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances. *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005). Although other relevant considerations under the circumstances may exist, our Supreme Court has determined that the reasonableness of a search or seizure turns on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizens' ordinary activities, and 3) the extent of law enforcement needs. *Baniaga*, 891 N.E.2d at 618. The burden is on the State to show that under the totality of the circumstances, the intrusion was reasonable. *Id*.

23

*Edmond v. State*, 951 N.E.2d 585, 592 (Ind. Ct. App. 2011) (quoting *Hathaway v. State*, 906 N.E.2d 941, 945 (Ind. Ct. App. 2009), *trans. denied*).

In the instant matter, I believe that the circumstances demonstrate that the search was reasonable under the totality of the circumstances. As is stated above, Officer Price conducted the search of Clanton's outer clothing because he was concerned that Clanton might be armed. Officer Price was working as a security officer at an apartment complex when he encountered Clanton and two other unknown men at approximated 11:15 p.m. The apartment complex was located in an area that was known to Officer Price to have high levels of criminal and drug activity.

The men, who were loitering at the apartment complex, turned their backs on Officer Price and the other officer when they first approached. One of the men subsequently fled and was followed by the other officer, leaving Officer Price with two unknown individuals. *See Mack*, 953 A.2d at 591 (providing that the fact that an officer may be outnumbered is certainly a factor to be considered when determining whether an officer's safety is at risk). The flight of one of the men loitering with Clanton raised Officer Price's suspicion that the men were engaged in criminal behavior. In light of these circumstances, I would conclude that Officer Price's decision to search Clanton to determine whether Clanton was armed was reasonable.

Moreover, again for the reasons stated above, I do not believe that Officer Price exceeded the scope of a warrantless search by pulling the plastic bag out of the pen cap. During the search, Officer Price felt a sharp object in Clanton's pocket. Officer Price

24

removed the object from Clanton's pocket and discovered that it was a pen cap. It was immediately apparent to Officer Price that plastic was stuck up in the pen cap, and, in his experience as a police officer, he knew that drug users commonly stored their drugs in this fashion. The fact that Officer Price did not know exactly which drug was stored in the plastic does not, in my view, render his removal of the plastic and subsequent seizure of the drugs found within unreasonable. Accordingly, I would affirm the judgment of the trial court.