# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 30 2015, 10:15 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Kristina J. Jacobucci
LaPorte, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Wilbert T. Sturgis, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | September 30, 2015 <br><br> Court of Appeals Cause No. 46A03-0506-CR-304 <br><br> Appeal from the LaPorte Superior Court <br><br> The Honorable Thomas J. Alevizos, Judge, The Honorable Walter Chapala, Judge <br><br> Trial Court Cause No. 46C01-0409-MR-129 <br> 46D01-0409-MR-129 |

**Barnes, Judge.**

# Case Summary

Wilbert Sturgis appeals his conviction and sentence for murder. We affirm.

# Issues

The issues before us are:

    I.      whether the prosecutor committed misconduct during voir dire;

    II.     whether the trial court properly admitted Sturgis's statement to police into evidence;

    III.    whether the trial court abused its discretion in sentencing Sturgis; and

    IV.    whether Sturgis's sixty-five-year sentence is inappropriate.

# Facts

On the morning of September 20, 2004, teenager Barbara Day was dismissed early from Michigan City High School because of an earlier altercation she had with another teenager known only by his nickname, "Spider." Tr. p. 324. Day went to her home in Michigan City and was joined there by at least eight other individuals, including twenty-six-year-old Sturgis. Day came up with a plan, to which everyone agreed, to go to the westside of Michigan City to look for Spider and to fight him.

[4]     The group at Day's house agreed to go to a school bus stop near 9th and Willard in Michigan City at about the time the bus was scheduled to drop off students. The group drove there in two cars, with Sturgis riding in a car driven by Natasha Harris. After arriving at the intersection, the group parked and got out of the cars. Day believed she saw Spider's cousin in a group of boys that included fifteen-year-old Blake Kelly walking along the sidewalk.

[5]     Day approached the group of boys and began asking Spider's supposed cousin where he was. This boy denied knowing where Spider was. Kelly then told Day and her friends that they were not going to "jump him," and Day told him to be quiet because he had nothing to do with it. *Id.* at 330. One of Day's cousins, Willie Martin, began threatening to fight Kelly but Day told him to leave Kelly alone.

[6]     While Day and her group were arguing with Kelly and his group, Sturgis walked up to Kelly and shot him in the jaw with a handgun. Kelly was unarmed, as was everyone else in the two groups besides Sturgis. This initial shot did not kill Kelly. Sturgis then put the handgun up against the side of Kelly's head and shot him again, this time killing him. Police soon obtained several statements identifying Sturgis as Kelly's killer, and they obtained a warrant for Sturgis's arrest.

[7]     On September 21, 2004, Sturgis turned himself into the Gary Police Department. He was housed in the Lake County Jail before being transported to the Michigan City Police Department for an interview on September 22,

2004. During the drive from the jail, officers did not engage in any conversation with Sturgis regarding the case. After arriving at the police station, Sturgis signed a waiver of rights form and submitted to an unrecorded interview. On the written waiver of rights form, next to the question "Has any force, threats or promises of any kind or nature been used by anyone to influence you to waive these rights," Sturgis originally wrote "yes" but crossed it out and wrote "no" along with his initials. Ex. 1. Initially during the unrecorded interview, Sturgis said he had been out of town when Kelly was shot so he could not have done it. He later retracted that statement, however, and admitted to what had happened.

[8] Police then began an audiotaped interview of Sturgis, approximately one-and-a-half hours after he had arrived at the police station. At the outset of the recording, Sturgis was asked if any force, threats, or promises had been made to secure his statement, and Sturgis responded "No." Ex. 2, p. 6. Sturgis then proceeded to describe, in cogent detail, the events leading up to and including his shooting and killing of Kelly. Toward the end of the interview, Sturgis was asked if there was anything he wanted to add to his statement, and he replied, "I think I need some psychiatric help I really do." *Id.* at p. 35.

[9] The State charged Sturgis with murder and Class A felony kidnapping. Sturgis never filed any motions related to his competency or any alleged mental illness. However, he did file a motion to suppress his statement to police on the basis that it was allegedly involuntary. After conducting a hearing, the trial court denied this motion.

[10] Sturgis's jury trial was held on April 11-14, 2005. During voir dire, the prosecutor read the charging information to the prospective jurors. The prosecutor also stated that the case involved "Mr. Blake Kelly, who was 15 years old at the time, [who] was shot shortly after leaving the school bus . . . ." Voir Dire Tr. p. 7. The prosecutor also noted that there had been "a lot of news media reports about that incident" and questioned prospective jurors whether they recalled reading or hearing any of that coverage. *Id.* The prosecutor also referred to Kelly's killing as a "terrible tragedy." *Id.* at 11. He also asked prospective jurors whether they knew Kelly, and one person responded that he did and that Kelly "seemed to be a good person." *Id.* at 12. Defense counsel made no objections during voir dire.

[11] The jury found Sturgis guilty of murder but not guilty of kidnapping. Additionally, the jury entered a finding for sentencing purposes that Sturgis had a history of criminal or delinquent activity. On May 12, 2005, the trial court sentenced Sturgis to a term of sixty-five years after finding no mitigating circumstances and that his criminal history was aggravating. Although a notice of appeal was timely filed on June 9, 2005, there have been various delays in bringing this appeal to fruition. It is now finally fully-briefed and ready to be decided.

# Analysis

## *I. Voir Dire*

[12] The first issue we address is whether the prosecutor committed misconduct during voir dire. When reviewing a claim of prosecutorial misconduct, we must determine: (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct had a probable persuasive effect on the jury. *Gregory v. State*, 885 N.E.2d 697, 706 (Ind. Ct. App. 2008), *trans. denied*. A claim of improper argument to the jury is measured by the probable persuasive effect of misconduct on the jury and whether there were repeated instances of misconduct. *Id.* When a party fails to object to alleged misconduct, appellate review of the claim is precluded. *Id.* In such a case, the defendant must establish that misconduct occurred and that it amounted to fundamental error. *Id.* "For a claim of prosecutorial misconduct to rise to the level of fundamental error, the defendant must demonstrate that the misconduct made a fair trial impossible or constitutes clearly blatant violations of basic and elementary principles of due process and presents an undeniable and substantial potential for harm." *Id.*

[13] Voir dire's purpose is to determine whether prospective jurors can render a fair and impartial verdict in accordance with the law and the evidence. *Id.* (quoting *Joyner v. State*, 736 N.E.2d 232, 237 (Ind. 2000)). Examination during voir dire is used to discover whether any prospective juror has an opinion, belief, or bias that would affect or control his or her determination of the issues to be tried, in which case the prospective juror could be challenged peremptorily or for cause.

*Id.* However, it is improper to use voir dire as an opportunity to "'brainwash' or attempt to condition the jurors to receive the evidence with a jaundiced eye." *Id.* at 706-07 (quoting *Robinson v. State*, 266 Ind. 604, 610, 365 N.E.2d 1218, 1222 (1977), *cert. denied*).

[14] Because Sturgis failed to object at any point during voir dire, he must establish both that prosecutorial misconduct occurred and that it constituted fundamental error. We conclude Sturgis has not cleared the first hurdle. First, Sturgis takes issue with the prosecutor having read the charging information to the jury pool at the outset of voir dire. The reading of a charging information during voir dire is not improper and does not constitute misconduct. *See Thompson v. State*, 690 N.E.2d 224, 228 (Ind. 1997) (holding there was no error in reading charging information to jury pool prior to voir dire, but it was erroneous to read death penalty information and its aggravating circumstances).

[15] Sturgis also contends it was improper to tell prospective jurors Kelly's age and where he lived. To the extent the prosecutor revealed such information, it was geared towards determining whether any of the prospective jurors knew Kelly personally. Determining whether a prospective juror has a relationship with someone related to a case clearly is a proper subject for voir dire. *See Joyner*, 736 N.E.2d at 238-39. We also do not believe the prosecutor was improperly attempting to try the case before evidence had been presented. *Cf. Steelman v. State*, 602 N.E.2d 152, 158 (Ind. Ct. App. 1992). This also was not an instance in which a prosecutor was attempting to allude to prejudicial evidence that would not be introduced at trial; such evidence regarding Kelly was in fact

introduced at trial. *Cf. Hopkins v. State*, 429 N.E.2d 631, 634-35 (Ind. 1981) (quoting *Phelps v. State*, 266 Ind. 66, 69, 360 N.E.2d 191, 193 (1977), *cert. denied*). There was no misconduct on this point.

[16] Sturgis further argues the prosecutor committed misconduct by referring to media coverage of the killing and asking whether any of the prospective jurors had been exposed to any of it. Again, attempting to gauge a jury pool's exposure to pretrial publicity is a vital part of voir dire when there has been such publicity. *See Elsten v. State*, 698 N.E.2d 292, 294 (Ind. 1998). There was no misconduct in questioning prospective jurors about pretrial publicity.

[17] Finally, Sturgis notes that the prosecutor referred to the "terrible tragedy" of Kelly's killing. Voir Dire Tr. p. 11. It suffices to say that Sturgis cites no authority for the proposition that referring to a youth's killing as a "terrible tragedy" is prosecutorial misconduct, as opposed to stating the obvious, i.e. that it is tragic. Nothing in referring to Kelly's killing as a tragedy implicated Sturgis as the cause of it. We see no prosecutorial misconduct here or in any of the other instances alleged by Sturgis.

## II. Motion to Suppress Statement to Police

[18] Next, we address Sturgis's contention that the trial court erred in refusing to suppress his statement to police. Because Sturgis proceeded to trial rather than pursuing an interlocutory appeal of the denial of his motion to suppress and objected at trial to introduction of his statement into evidence, the issue is properly framed as whether the trial court abused its discretion in admitting it.

*See Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013). The admission of evidence is within the discretion of the trial court. *Id.* at 259-60. We will reverse a ruling on the admission of evidence only for an abuse of that discretion, which occurs only when the ruling is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Id.* at 260.

[19] Sturgis contends his statement was involuntary and thus inadmissible per the Fifth Amendment to the United States Constitution. "If a defendant challenges the voluntariness of a confession under the United States Constitution, the state must prove the statement was voluntarily given by a preponderance of the evidence." *Pruitt v. State*, 834 N.E.2d 90, 114 (Ind. 2005) (citing *Colorado v. Connelly*, 479 U.S. 157, 167-69, 107 S. Ct. 515, (1986)), *cert. denied*.[1] When evaluating a claim that a statement was involuntarily given, we must examine the totality of the circumstances, including whether there is any evidence of police coercion, the length of the interrogation, its location, its continuity, as well as the defendant's maturity, education, physical condition, and mental health. *Id.* at 115. On appeal we will not reweigh the evidence and must examine the record for substantial, probative evidence of voluntariness in a light most favorable to the State. *Id.*

[20] Sturgis's claim of involuntariness hinges almost entirely upon his statement toward the end of the interview, after he had already described Kelly's murder

---

[1] Sturgis makes no separate argument under the Indiana Constitution.

in detail, that "I think I need some psychiatric help I really do." Ex. 2, p. 35. We note that the mere fact a statement is given by a mentally ill defendant does not render it per se inadmissible. *Pruitt*, 834 N.E.2d at 115. A defendant claiming mental impairment must show specific instances where his or her alleged impaired abilities had an effect on the voluntariness of a statement. *Id.* "[A] defendant's mental state is not enough to render a confession inadmissible in the absence of coercive police activity." *Smith v. State*, 689 N.E.2d 1238, 1248 (Ind. 1997).

[21] Here, we observe that there is no evidence in the record that Sturgis actually suffers from any mental illness. Sturgis never filed any notice of an insanity defense or of an alleged lack of competency to stand trial. His police statement likewise contains no indicators that he was mentally ill, up until the very end when he claimed that he needed a psychiatrist. Certainly, there is no evidence that police were aware of and attempted to take advantage of any mental illness. Thus, there is a lack of police coercion that would render Sturgis's statement involuntary. *See id.* (noting "defendant has made no claim that the police who interrogated him knew that he was slow or unusually susceptible to pressure").

[22] Sturgis also points to his having originally writing "yes" on the written waiver of rights form next to the question, "Has any force, threats or promises of any kind or nature been used by anyone to influence you to waive these rights?" Ex. 1. He relies upon this as evidence that he was coerced into waiving his rights. We disagree. The evidence most favorable to the trial court's ruling is

that this was a mistaken entry on the form, which he corrected and initialed with the word "no." Also, when orally asked at the outset of the recorded interview whether he had been forced or threatened into waiving his rights, Sturgis answered "no" without hesitation. As for other indicators of voluntariness, the interview—including the unrecorded portion—was not particularly long.[2] We see no clear evidence of force or coercion in Sturgis's first, crossed-out response on the written waiver form. The trial court did not abuse its discretion in admitting Sturgis's statement into evidence.

### III. Sentencing—Abuse of Discretion

[23]  Next, we address the first of Sturgis's two challenges to his sixty-five-year sentence, which is the maximum possible term-of-years sentence for murder. *See* Ind. Code § 35-50-2-3(a). At the outset, we note the timing of Sturgis's offense and sentencing. He committed this offense on September 20, 2004. On that date, sentencing in Indiana was governed by a "presumptive" scheme. *See Anglemyer v. State*, 868 N.E.2d 482, 485-86 (Ind. 2007). Sturgis was not sentenced until May 12, 2005. On April 25, 2005, the legislature had enacted a revised version of the sentencing law to replace "presumptive" sentences with "advisory" sentences, in response to the holdings in *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004), and *Smylie v. State*, 823 N.E.2d 679 (Ind. 2005). However, the presumptive sentencing scheme in effect at the time of

---

[2] Although Sturgis suggests to the contrary, there was no evidence that police discussed the case with Sturgis during his ride from the jail to the police station.

Sturgis's offense is controlling here. *See Robertson v. State*, 871 N.E.2d 280, 286 (Ind. 2007).

[24] Under the presumptive scheme, trial courts were required to impose the designated presumptive sentence for each class of felony unless the court justified deviating from the presumptive upon a finding of aggravating or mitigating circumstances. *Id.* at 486. To facilitate this sentencing scheme, whenever a trial court deviated from a presumptive sentence, "it was required to '(1) identify all significant mitigating and aggravating circumstances; (2) state the specific reason why each circumstance ha[d] been determined to be mitigating or aggravating; and (3) articulate the court's evaluation and balancing of circumstances.'" *Id.* (quoting *Prickett v. State*, 856 N.E.2d 1203, 1207 (Ind. 2006)). Sturgis specifically contends the trial court erred in failing to find his age and purported remorse as mitigating circumstances. It was within the trial court's discretion whether to find any mitigating circumstances. *Rascoe v. State*, 736 N.E.2d 246, 248-29 (Ind. 2000). A defendant claiming that the trial court failed to identify or find a mitigating circumstance had to establish that the circumstance was both significant and clearly supported by the record. *Id.* at 249. Trial courts were not obligated to accept a defendant's contentions as to what constituted a mitigating circumstance. *Id.*

[25] Regarding Sturgis's purported remorse for murdering Kelly, he notes that he turned himself into police, cooperated with police in providing a confession, and expressed remorse in that statement. The trial court's determination of the genuineness of a defendant's remorse is similar to any other credibility

determination that normally is accepted by an appellate court. *See Pickens v. State*, 767 N.E.2d 530, 535 (Ind. 2002). Here, although Sturgis did turn himself into police, there was already a warrant out for his arrest based on several identifications of him as Kelly's killer. Sturgis also never expressed remorse personally to any of Kelly's family at the sentencing hearing. We do not believe the trial court was required to find that Sturgis's purported remorse was a significant mitigating circumstance.

[26] Sturgis also contends the trial court should have assigned mitigating weight to his age—twenty-six when he murdered Kelly. Sturgis cites no cases that have assigned mitigating to such a relatively advanced age. Indeed, we have looked unfavorably upon claims that a twenty-one year-old deserved special consideration in sentencing. *See Coleman v. State*, 952 N.E.2d 377, 385 (Ind. Ct. App. 2011). We perceive no reason why they trial court was required to assign mitigating weight to Sturgis's age. In sum, the trial court did not abuse its discretion in sentencing Sturgis.

### IV. *Sentencing—Appropriateness*

[27] Finally, we address Sturgis's argument that his sentence is inappropriate pursuant to Indiana Appellate Rule 7(B) in light of his character and the nature of the offense.[3] Although Rule 7(B) does not require us to be "extremely"

---

[3] Sturgis makes no argument that his sentencing under the presumptive scheme and the dictates of *Blakely* and *Smylie* affects our review of his sentence under Rule 7(B).

deferential to a trial court's sentencing decision, we still must give due consideration to that decision. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." *Id.*

[28] The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. Id. at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010).

[29] Regarding the nature of the offense, Sturgis, a twenty-six-year-old man, got involved in a high school dispute between two teenagers. He shot Kelly twice, with the second shot being at point-blank range after the first shot in Kelly's jaw

failed to kill him. Kelly was unarmed and was not even the subject of the dispute, but essentially found himself in the wrong place at the wrong time. Kelly also was only fifteen years old, had just gotten off the school bus, and was on his way to practice music when he was shot and killed. This crime was utterly senseless and egregious.

[30] As for Sturgis's character, he has prior adult convictions for Class D felony possession of cocaine, Class B felony armed robbery, and misdemeanor illegal consumption of alcohol. Sturgis failed to satisfactorily complete probation for the alcohol offense. Sturgis also admitted to having a juvenile history in Illinois related to marijuana possession. In sum, there is substantial evidence of Sturgis's negative character attributes and no evidence of any positive attributes. Given the egregious nature of the offense and Sturgis's criminal history, with no evidence of any counterbalancing positive attributes, we cannot say that Sturgis's maximum term-of-years sentence of sixty-five years is inappropriate.

## Conclusion

[31] Sturgis has failed to establish that prosecutorial misconduct occurred during voir dire or that the trial court abused its discretion in allowing his statement to police into evidence. Also, the trial court did not abuse its discretion in sentencing Sturgis, and his sentence of sixty-five years is not inappropriate. We affirm.

Affirmed.

Kirsch, J., and Najam, J., concur.